ROBERT SCOTT v. CITY OF TAMPA, a municipal corporation

30 So. (2nd) 300
April 4, 1947
Rehearing Denied May 19, 1947

January Term, 1947
Special Division A

*Mabry, Reaves, Carlton, Anderson & Fields,* and *H. D. Wentworth,* for appellant.

*Ralph A. Marsicano* and *Karl E. Whitaker,* for appellee.

SMITH, Associate Justice:

This case is here on appeal from an order sustaining demurrer to plaintiff's declaration and final judgment subsequently entered. The declaration is in five amended counts; each count is based upon a paving lien issued by the City of Tampa, February 22, 1927, payable in five annual installments, maturing one, two, three, four and five years after date, interest at 8%, the pertinent part of which is as follows:

"The payment of this Certificate and annual interest thereon is hereby guaranteed by the City of Tampa, and in case of nonpayment of principal and annual interest at maturity by the owner of property herein described, *and the holder and owner of this certificate shall have failed to collect the same by suit, against the property or the owner thereof,* the same shall be redeemed by the City of Tampa at the option of the holder of the certificate."

The case turns on the provision in the certificate which states that the City will pay said certificate when the "owner of this certificate shall have failed to collect the same by suit." The first amended count alleges suit was brought by the holder July 5, 1945. This suit resulted, as shown by Exhibit A, in the purchase of the land by the plaintiff "subject to outstanding taxes," for $100.00. Suit was brought on the certificate in the second amended count July 16, 1945; suit was brought on the certificate in the third amended count July 25, 1945; suit was brought on the certificate in the fourth amended count July 24, 1945; suit was brought on the certificate in the fifth amended count July 5, 1945. As to counts two to five, inclusive, it is shown in each instance that relief was denied and bill of complaint was dismissed because good and sufficient title to land covered by the certificate had been previously acquired in such a manner that the lien of the certificate sought to be foreclosed had been extinguished.

Plaintiff undertakes to excuse his delay in bringing suit on the several certificates by stating that at the maturity of the certificates and subsequently foreclosure would not have resulted in a sum sufficient to pay the certificates and costs; that during all of the time after maturity to date of suit the plaintiff carried no negotiations with the City, defendant, looking to payment . . . defendant never at any time denied liability; that delay in enforcing the certificates did not in any way result in depreciation of the value of the security; that at the time of the foreclosure and sale the market was at the highest since maturity of the certificates; that defendant never requested plaintiff to foreclose and defendant knew at all times of the default.

The Circuit Court held that the liability of the City "is conditional or secondary" and that the law merchant rule of "due diligence" applies; and that the declaration in each count thereof fails to show due diligence on the part of the plaintiff, and judgment was therefore entered against him.

There are lengthy briefs, but briefly the questions presented are: (1) A construction of the certificate which contains the language "and the holder or owner of said certificate shall have failed to collect the same by suit." (2) Does the "due diligence rule" apply.? (3) If the "due diligence rule" does apply, whether or not the showing in the several counts of the declaration meets the requirements of "due diligence."

This count has already construed an identical instrument, in the case of City of Tampa v. Cobb, 185 So. 330. Plaintiff sought to foreclose on one of these certificates, making the City of Tampa a party defendant. The court held that the City of Tampa could not be made a party defendant, it being necessary for plaintiff to show that he had "exhausted remedy against property" by a prior suit.

The case further holds that the certificate is stated "in clear and unambiguous terms." And

"In constructing a contract of guaranty free from ambiguity a guarantor is entitled to a *strict construction* in working out of the intent."

: In connection with the construction and holding of this Court, above quoted, it is well, in a consideration of this case, to keep in mind the definition of "law merchant." Words and Phrases, 24, Page 387:

"The 'law merchant' is part of the common law of England, and as such is adopted by our Constitution as our law also. Indeed, it is the law of the whole mercantile world. It is to be taken notice of by the judges as such, and to be understood and declared by them in the same way as all other parts of the law are to be interpreted and declared. When it becomes a question what the law merchant is in any particular case in forensic discussion, the question must be answered by the judges, and not by the jury; for this law merchant cannot, no more than any other part of the common law, be proved before a jury by witnesses as a matter of fact, and so be subjected to them to determine what it is."

Ferris v. Saxton, 4, N.J.L. (1 Southard) 1, 18.

It is contended on the part of the plaintiff that, because this is a statutory contract with a municipality, the rule of "due diligence" cannot be ingrafted upon it. There is no distinction as applied to a municipality, and counsel fails to cite a single case that makes any distinction. Nothing is ingrafted —settled law is simply applied to a given set of facts.

It is further contended that it cannot apply because "there is only one contract, one debt and one principal debtor." This is answered by saying that the situation arises from the peculiar power and authority of the City, by reason of which the land is made the primary security and the City's conditional promise a secondary security.

The City's position is that of a conditional or secondary guarantor and the rule of "due diligence" must be applied. On the question of due diligence many authorities are cited. R. C. L. seems to state it clearly and was cited by the learned Circuit Judge, Vol. 12, Page 1094:

"A conditional guaranty of this nature implies that the creditor will make *diligent effort* to enforce the collection of the obligation from the principal debtor. The liability of the guarantor does not commence until the creditor has taken required steps against the principal debtor and, if the creditor

*unreasonably* neglects to proceed against the principal, the guarantor is discharged."

It is again stated on Page 1064 of the same volume:

"An absolute guaranty of payment differs from a conditional guaranty against loss as the result of non-payment of a debt in that in the first case the liability of the guarantor is fixed by the failure of the principal debtor to pay at maturity, while *in the second* the contract is in the nature of a guaranty of collection, *no liability* being incurred *until after by due diligence* the guarantee has become unable to collect the debt from the principal debtor."

The cases have, of course, generally arisen over the various types of guaranties in relation to ordinary promissory notes, but the principle as here applied is the same.

28 C. J., Page 976 Text:

" . . . but if the delay is, under the circumstances, unnecessary or unreasonable it will discharge the guarantor."

Under this text an array of decisions refer to "delays held to discharge guarantor."

Words and Phrases, 13, under Due Diligence, cites the following case:

"Under a statute providing that the assignee of a note, having used due diligence, shall have an action against his immediate endorser, it is held that the phrase "due diligence" must be taken to mean prompt employment of the means which the law affords for the enforcement and collection of debts due and payable."

Brown v. Nichols, Shepard & Co., 123 Ind. 492, 24 N. E. 339.

The claim is made in an attempt to excuse the delay that as the property at no time was worth the amount of the lien and costs of foreclosure, no harm resulted. The contract itself provides that the holder "shall have failed to collect the same by suit."

In the case of French v. Marsh, 29 Wis. 649, the Court had under consideration the following:

"Guaranty of the collection of a note to be void 'if said note is collectible.' "

One of the defenses was "that the plaintiff had failed to prosecute . . . the original debtor with due legal diligence." And further asserted that the debtor, when the note matured, was hopelessly insolvent.

On the question involved, the Court, quoting with approval a New York case, stated:

"When a creditor agrees with the surety for his debtor that he will commence suit against such debtor within a reasonable time after the debt falls due, and in default thereof, that the surety shall be released, it is a condition precedent to his right of action against the guarantor that such suit shall not only be so commenced but that it shall be carried to consummation. The plaintiff had no right to determine on its own responsibility whether the debt was collectible. That was the question which the defendant had made it incumbent upon him to ascertain by recourse to the ordinary rules provided by the law for the collection of debts."

The opinion further stated:

"It was nearly four years after the debt became due before an action was commenced upon the note. It is idle to contend that this was diligent prosecution. . . . "

There is authority to the effect that the parties themselves, having contracted as to what the test shall be, the suit must be brought, even though futile.

In the case of Bosman v. Akeley, 39 Mich. 710, Mr. Justice Cooley wrote the opinion. The allegation in the declaration was:

"For a valuable consideration to him in hand paid by guaranty in writing, endorsed upon said note and signed by said defendant, did guarantee to said plaintiff the collection of said note."

The Court stated:

"The question presented on demurrer to these allegations is whether the fact that the maker of the note was pecuniarily irresponsible and insolvent excuses the neglect to take proceedings at law for collection. . . . "

Mr. Justice Cooley points out that the cases on the question are not in harmony, and states:

"The New York cases on the other hand have always held that in fixing liability on such a guaranty the only evidence that the note is not collectible is the failure of legal proceedings, diligently pursued, to result in collection." Several cases cited.

The learned Justice then concludes:

"We believe that rule to be reasonable and to accord with the general understanding of parties when such guaranties were given. The undertaking that a note is collectible means that if proceedings for collection are diligently prosecuted at law, they shall result in collection. It does not mean that the maker of the note is responsible, or shall remain responsible, but that the debt shall be collected if proper steps are promptly taken for the purpose. It may be that an officer would find attachable property where the witnesses know of none. It may be that with the large exemptions allowed by law the debtor would choose to make payment rather than have the judgment stand against him, even when payment could not be enforced."

In this case it might be pointed out that no one knows what a prompt foreclosure suit would have produced; it is entirely possible that some or perhaps all of the property would have been protected by someone with a different view as to the value of the land at the time, or for sentimental reasons.

A factual situation is apparent from the declaration, which seems to suggest a good reason for the application of the "due diligence rule." The certificates here involved bear interest at the rate of 8% per annum. In each instance the interest is considerably more than the principal. In the amended fifth count the principal is shown in the sum of $1,134.96; interest, $1,825.01. The court will take judicial notice of financial trends. It is a known fact that in the last many years almost no one has paid 8% interest, certainly not solvent municipalities. And so it is that if the owner of the certificates had diligently pursued his rights, the City would certainly have refinanced at a much lower rate of interest. On the other hand, if the plaintiff is allowed

to collect at the rate of 8%, his unreasonable delay would result in his very considerable profit.

The judgment should be affirmed.

Affirmed.

THOMAS, C. J., TERRELL and CHAPMAN, JJ., concur.