764 F.2d 804
 FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,
v.
UNIVERSITY ANCLOTE, INC., C. Thomas Petersen, Peter
Lenhardt, Gerald P. Goulish Engineering, Inc.,
Carl S. Courson Land Surveying, Inc., Defendants,
James C. Petersen, Defendant-Appellant.
 No. 84-3139.
 United States Court of Appeals,
Eleventh Circuit.
 July 2, 1985.
 
 Joel D. Eaton, Miami, Fla., for defendant-appellant.
 Gregory G. Jones, Tampa, Fla., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Florida.
 Before VANCE and ANDERSON, Circuit Judges, and HENLEY*, Senior Circuit Judge.
 HENLEY, Senior Circuit Judge:
 
 
 1
 James C. Petersen appeals from the district court's entry of summary judgment in favor of the Federal Deposit Insurance Corporation (FDIC) in its suit to enforce a guaranty agreement. Finding no error in the district court's construction of the agreement, we affirm.
 
 
 2
 On June 10, 1980 University Anclote, Incorporated (Anclote) executed a promissory note in favor of Metropolitan Bank and Trust Company (Bank) in the amount of $1,428,000.00 plus interest at a rate of two per cent over the prime interest rate. The note was secured by a mortgage executed on the same day encumbering specified real property owned by Anclote.
 
 
 3
 Both the note and mortgage were essentially non-recourse in nature since the Bank's sole remedy in the event of default was to seek foreclosure of the mortgage. Anclote's note in part provided:
 
 
 4
 There shall be no general corporate liability hereunder and nothing contained herein shall obligate the undersigned or its successors or assigns further than to bind its right, title and interest in the property securing this Note and fully described in the Mortgage of even date herewith. In the event of a default hereunder, the sole remedy of the holder hereof shall be foreclosure of the property covered by the aforesaid Mortgage and the holder hereof shall not be entitled to a deficiency judgment and none shall be sought or entered.[1]
 
 
 5
 On June 23, 1980 Petersen executed an "Unconditional Guaranty with Limits of Liability," in favor of the Bank. The agreement states:
 
 
 6
 [Guarantors] unconditionally guarantee the prompt and full payment to Bank when due of all indebtedness and liabilities of any kind (including without limitation principal, interest and attorneys' fees) for which Customer [Anclote] is now or may hereafter become liable to Bank in any manner, either primarily or secondarily, absolutely or contingently, directly or indirectly, and whether incurred directly with Bank or acquired by Bank by assignment or otherwise and however evidenced, and any and all renewals or extensions of or substitutes for any of the foregoing indebtedness or liabilities or any part thereof.
 
 
 7
 Petersen's liability under the agreement was expressly limited to $600,000.00.
 
 
 8
 The Bank subsequently became insolvent and the FDIC was appointed liquidator of the Bank's assets. The FDIC, in its corporate capacity, purchased certain assets from the liquidator, including the note and mortgage involved here. At the time of FDIC's purchase, Anclote had already defaulted in payment of the note.
 
 
 9
 The FDIC then brought a foreclosure action against Anclote and sought recovery on the guaranty from Petersen. The basic issues were decided on the parties' motions for summary judgment. The district court entered judgment of foreclosure against Anclote[2] and a judgment against Petersen to the extent of his liability under the guaranty, $600,000.00.[3]
 
 
 10
 Petersen contends that because the primary debtor cannot be held liable for the amount of debt reflected in the note, neither can he, as guarantor, be held liable for this sum. He asserts that, as a collateral undertaking, the extent of his guaranty can only be determined with reference to Anclote's obligations after default. He argues that since Anclote's liability to FDIC was wholly satisfied by the foreclosure decree, there is no longer any underlying debt left for him to pay. Petersen contends that because the agreement does not expressly provide for greater liability on the part of the guarantor, he cannot be held liable beyond the extent of Anclote's liability.
 
 
 11
 We have no trouble with Petersen's recitation of the general rules governing contracts of guaranty. If a guaranty is free from ambiguity, it is strictly construed in favor of the guarantor. Scott v. City of Tampa, 158 Fla. 712, 30 So.2d 300, 302, cert. denied, 332 U.S. 790, 68 S.Ct. 99, 92 L.Ed. 372 (1947). If ambiguous, it is construed against the drafter--here, the Bank and its assignee, the FDIC. See Miami Nat'l Bank v. Fink, 174 So.2d 38, 40 (Fla.3d DCA), cert. denied, 180 So.2d 658 (Fla.1965). A guaranty is a collateral promise to answer for the debt or obligation of another. Nicolaysen v. Flato, 204 So.2d 547, 549 (Fla. 4th DCA 1967), cert. denied, 212 So.2d 867 (Fla.1968). The extent of the guarantor's liability depends upon the language of the guaranty itself and is usually equal to that of the principal debtor. 38 Am.Jur.2d Guaranty Sec. 74 (1968). "[A] guarantor is liable only in the event and to the extent that his principal is liable." Id. at Sec. 77. Finally, if the principal's obligation has been paid or satisified, the guarantor's obligation is terminated. Id. at Sec. 78.
 
 
 12
 The difficulty in this case arises, however, in applying these rules to the documents at issue. The crux of the controversy is the debt or obligation Petersen undertook to guarantee. Petersen contends that a guarantor's legal liability is that of the principal debtor's after default. Here, he alleges there is no guarantor liability since the FDIC may not pursue the principal debtor beyond foreclosure of the property. The FDIC, on the other hand, contends that the language of the guaranty is unconditional and refers to all of Anclote's debt, whether recourse or non-recourse.
 
 
 13
 After careful consideration, we agree with the FDIC's construction of the extent of Petersen's liability under the guaranty. The guaranty agreement itself reflects that Petersen guaranteed all indebtedness and liabilities of any kind for which Anclote was or was to become liable. Despite the fact that the note prohibited any deficiency judgment and provided that the holder's sole remedy was to be foreclosure against the property, the note and mortgage also provided that upon default the holder could declare the entire balance due and payable and could enforce the collection of all sums due.
 
 
 14
 We agree with the district court that the "logical interpretation of these provisions concerning liability, acceleration and remedies is that while the Plaintiffs may accelerate and obtain judgment against Anclote for the total balance due under the note, that judgment cannot be satisfied from any Anclote assets other than the mortgaged property." However, Anclote's "indebtedness" is the total sum reflected in the note, plus interest and other costs. As Petersen unconditionally guaranteed to pay this amount if Anclote defaulted, he may be called upon to satisfy the debt up to the express limit of his guaranty.
 
 
 15
 As for Petersen's claim that greater liability is being imposed upon him than that of the principal debtor, such is not precisely the case. Petersen and Anclote are both liable for the amount of the note, plus interest and costs. Merely because Anclote cannot be held liable for a deficiency judgment does not mean that Anclote did not incur an indebtedness when it signed the note. Similarly, Petersen can be held liable for his separate and independent promise to pay the full amount of Anclote's obligation.
 
 
 16
 Even assuming that greater liability is being imposed, such was created by the contract itself. Petersen guaranteed to pay all indebtedness "of any kind" for which Anclote was liable "in any manner, either primarily or secondarily, absolutely or contingently, directly or indirectly." It further provided that:
 
 
 17
 No extension of time or other indulgence granted by Bank to Customer or Guarantors, or any of them, will release or affect the obligations of Guarantors and no omission or delay on Bank's part in exercising any right hereunder or in taking any action to collect or enforce payment of any obligation guaranteed hereby will be a waiver of any such right or release or affect the obligations of Guarantors hereunder.
 
 
 18
 This language, in conjunction with the fact that the guaranty was undertaken in connection with a non-recourse debt, acted to expressly create greater liability on the part of the guarantor. See Victory Highway Village, Inc. v. Weaver, 480 F.Supp. 71, 75-76 (D.Minn.1979) (where somewhat similar language in guaranty agreement was held to create greater liability on the part of the guarantor in circumstances where principal debtor could not be held liable for a deficiency judgment), aff'd, 634 F.2d 1099 (8th Cir.1980).
 
 
 19
 A contract of guaranty may provide for greater liability than that of the principal debtor. 38 C.J.S. Guaranty Sec. 43 (1943). Petersen's unconditional guaranty of the non-recourse obligation is precisely such an undertaking. Any other construction of the contract would be elevating form over substance, and, as the district court noted, would "declare that the parties originally involved in the negotiation of the guaranty engaged in the drafting of an elaborate agreement which was, from its inception, meaningless and without value."[4]
 
 
 20
 In sum, the terms of the guaranty are clear and unambiguous. Even construed strictly, Petersen's guaranty unconditionally promises to pay Anclote's debt upon default and the parties clearly intended that the guaranty cover the note at issue here. There being no material issue of fact in dispute, summary judgment is AFFIRMED.[5]
 
 
 
 *
 Honorable J. Smith Henley, U.S. Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The note also contained language inconsistent with non-recourse liability:
 Upon disposition of any Collateral after the occurrence of any default hereunder, Maker shall be and remain liable for any deficiency....
 However, both the parties and the district court proceeded under the assumption that the note and mortgage were non-recourse obligations. We likewise accept this interpretation for purposes of this appeal.
 
 
 [2]
 The decree of foreclosure indicated that the total debt owed to the FDIC, including principal, interest, costs and attorneys' fees, was $2,178,550.14
 
 
 [3]
 The court stated, however, that "the amount of Petersen's liability may be decreased if the Plaintiff's pursuit of other remedies, such as a foreclosure sale, yields a deficiency less than $600,000.00." In a prior order, we held that the district court's order was final for purposes of appeal notwithstanding the trial court's reservation of the power to order a reduction in the amount of the judgment ultimately to be paid to the FDIC
 We also note that the FDIC purchased the property at a foreclosure sale for its bid of $745,900.00. Currently pending before the district court are Petersen's motions to have the property valued so the amount of his actual liability to the FDIC can be determined.
 
 
 [4]
 Petersen contends that the guaranty would have value if sued upon in another context, such as with reference to any possible future advances given to Anclote apart from the funds distributed under the non-recourse note. If such advances were evidenced by other, with-recourse, notes, Anclote would be liable for a deficiency judgment, and, if Anclote defaulted, Petersen would be liable on his guaranty. However, Petersen produced no affidavits or other evidence which would indicate that with-recourse obligations were either contemplated or entered into. There is no showing that Petersen did not intend his guaranty to cover the note in question or that they were not related to each other. In fact, the funds reflected in the note were not advanced until after Petersen signed the guaranty. This raises the logical inference that the guaranty induced the Bank to disburse the funds to Anclote. While it is the FDIC's burden to show the absence of a disputed material fact, Thrasher v. State Farm Fire & Cas. Co., 734 F.2d 637, 638 (11th Cir.1984) (per curiam), "[a]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The FDIC has shown there is no material fact at issue with regard to the relationship between the note and guaranty and Petersen has produced nothing to indicate that the two were not related
 
 
 [5]
 We express no opinion on the motions currently pending before the district court concerning the actual value of the foreclosed property and how Petersen's ultimate liability will be affected by such a valuation