810 P.2d 599

**FLORI CORPORATION, an Arizona corporation, Plaintiff/Appellee,**

v.

**John P. FITZGERALD and Ann M. Fitzgerald, husband and wife, Defendants/Appellants.**

**No. 2 CA–CV 90–0061.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 30, 1990.

Review Denied May 21, 1991.

Stanley R. Lerner, P.C. by Stanley R. Lerner, Scottsdale, and Tracey Westerhausen, Phoenix, for plaintiff/appellee.

Whitehill West by Alex G. Duncan, Tucson, for defendants/appellants.

OPINION

FERNANDEZ, Chief Judge.

Appellants John and Ann Fitzgerald appeal from the trial court's rulings that the applicable statute of limitations on a continuing personal guaranty is six years, that

appellants' filing of bankruptcy proceedings did not terminate the guaranties at issue, and that the guaranties were not defective. We affirm.

Appellee Flori Corporation (formerly known as Electrical Equipment Company) is a wholesale distributor of, among other things, Zenith television products. John and Ann Fitzgerald are the officers of John P. Fitzgerald, Inc., dba Fitzgerald Color T.V. King (hereafter JPF), a retailer of television sets. Pursuant to a type of financing known as "floor planning," Flori sent merchandise to JPF and billed the flooring company, ITT Diversified Credit Corporation (ITT). ITT paid Flori, and JPF paid ITT as the merchandise was sold.

From 1969 to 1984 Flori extended credit to JPF in reliance upon continuing personal guaranties signed by the Fitzgeralds. JPF defaulted on an open account in June 1982 in the amount of $1,185.50 and on another account in April 1984 in the amount of $13,382.18.

Both JPF and the Fitzgeralds filed Chapter 11 bankruptcy proceedings on October 1, 1981. After receiving authority from the bankruptcy court, JPF entered into an inventory security agreement with Flori in early 1982. ITT then provided flooring based on guaranties from the Fitzgeralds and from Flori. The bankruptcy proceedings were dismissed as to the Fitzgeralds in September 1983 and as to JPF in May 1987. JPF defaulted on the money owed to ITT, and Flori was required to pay ITT pursuant to its guaranty. ITT then assigned its claims against JPF and the Fitzgeralds to Flori.

Flori filed suit in May 1988, seeking recovery from the Fitzgeralds on their guaranty to Flori for the two unpaid open accounts. Its third claim was for recovery on the guaranty the Fitzgeralds had given ITT that was assigned to Flori. The court awarded judgment to Flori, entering findings of fact and conclusions of law. The Fitzgeralds challenge only the conclusions of law.

## STATUTE OF LIMITATIONS

■ The earliest debt claimed under the guaranty accrued June 19, 1982 and the latest on May 29, 1984. Suit was filed May 26, 1988. The Fitzgeralds argue that the claims are barred by either the three-year statute of limitations for an open account, A.R.S. § 12–543(2), or the four-year statute of limitations for breach of a sale contract under the Uniform Commercial Code, A.R.S. § 12–544(4). It is undisputed that the claims against JPF would be barred under those statutes. The court found, however, that the applicable statute is A.R.S. § 12–548, which imposes a six-year limitation for suit on a written contract.

No Arizona case is directly on point. The Fitzgeralds argue that the rationale of *International Harvester Co. v. Fuoss*, 157 Ariz. 378, 758 P.2d 649 (App.1988) supports their contention that an action on a guaranty is governed by the same statute of limitations as the underlying debt. In that case, this court held that a lender's claim against guarantors was timely because it was filed within the three-year statute of limitations for an open account. The six-year statute was not an issue there, however, so that case is not dispositive. Although there is a conflict of authority, a majority of jurisdictions hold that although an action against the debtor is barred by the statute of limitations, the guarantor of the debt is not released or discharged. *See* Annot., 58 A.L.R.2d 1272 (1958); *see also* Restatement of Security § 130, comment a (1941).

The identical issue was presented in *Bomud Co. v. Yockey Oil Co.*, 180 Kan. 109, 299 P.2d 72 (1956). The court held that although the statute of limitations had run on the underlying debt, the action could proceed against the guarantor, noting that a guaranty contract is a separate contract pursuant to which the guarantor warrants that the principal shall perform rather than agreeing to perform jointly with the principal. We agree with the reasoning of that case that an action on a guaranty is governed by a different statute of limitations than that for an underlying debt. We also

agree with the trial court that the six-year statute is the applicable one in this case.

■ The Fitzgeralds next contend that because there was no written agreement between ITT and JPF after the bankruptcy filing, JPF received the merchandise under an oral contract subject to the three-year statute of limitations. This argument ignores the existence of the October 6, 1980 guaranty by the Fitzgeralds to ITT that was assigned to Flori after JPF defaulted. There was no evidence that the guaranty had been revoked. The guaranty was thus a continuing one as long as JPF participated in ITT's flooring plan. Moreover, that argument falls in the face of our ruling that the applicable statute of limitations is not that for the underlying debt.

## BANKRUPTCY FILING

■ Both Chapter 11 bankruptcy proceedings were ultimately dismissed without a discharge of the bankrupts. No reorganization plans were ever filed by the bankrupts. The effect of the dismissals is governed by 11 U.S.C. § 349(b). That section provides:

> Unless the court, for cause, orders otherwise, a dismissal of a case ...
>
> (1) reinstates—
>
> (A) any proceeding or custodianship superseded under section 543 of this title;
>
> (B) any transfer avoided under [various sections] or preserved under [various sections]; and
>
> (C) any lien voided under section 506(d) of this title;
>
> (2) vacates any order, judgment, or transfer ordered, under [various sections]; and
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

The Fitzgeralds argue that because the debts sued upon were incurred after the bankruptcy filing, Flori is barred from collecting them because they were transactions of a debtor in possession, a different entity than JPF. In support of that conten-

tion, the Fitzgeralds cite *Bank of New England v. Klein,* 86 B.R. 897 (S.D.Tex. 1988). In that case, the court held that the guarantor was not liable for post-petition debts. The bankrupt in that case, however, was discharged. That was not the case here. The court in *In re Safren,* 65 B.R. 566 (C.D.Cal.1986), held that the partnership remained liable for post-petition transactions after a Chapter 11 proceeding was dismissed without confirmation of a reorganization plan. We find no merit to the Fitzgeralds' contentions.

## VALIDITY OF GUARANTY

■ The Fitzgeralds first contend that the guaranty to Flori is fatally defective because the acknowledgment section completed was for a corporation rather than for individuals. They do not challenge the validity of the guaranty provisions, only the form of acknowledgment. The trial court found that the Fitzgeralds represented to Flori that they were acting on behalf of the marital community, that they intended to personally guarantee JPF's debts, and that Flori relied upon those representations. The record supports those findings. John Fitzgerald testified that he understood it was a personal guaranty. The notary who completed the wrong acknowledgment was an employee of JPF. We find no error.

■ The Fitzgeralds also contend that the October 6, 1980 guaranty to ITT is defective because the blank for the dealer's name is not filled in. This contention, however, ignores a number of facts. The guaranty was executed contemporaneously with the agreement for wholesale financing that reflects JPF's name. Fitzgerald testified that when he signed the guaranty, he intended to guarantee JPF's debts. In addition, the October 6, 1980 transaction was identical to two previous transactions between the same parties. No incompleteness exists when the agreements are read together.

> The mere fact that a signed contract contains blanks does not necessarily invalidate it.... It is only invalidated when those unfilled blanks pertain to im-

portant matters which render an agreement incomplete.... However, if the omitted information can be supplied from other parts of the writing itself then the agreement will be upheld as enforceable. *Hofmann Co. v. Meisner,* 17 Ariz.App. 263, 266, 497 P.2d 83, 86 (1972) (citations omitted).

Appellee will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

Affirmed.

ROLL, P.J., and HOWARD, J., concur.