885 P.2d 152

**PROVIDENT NATIONAL ASSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Romano SBROCCA and Rosanne Sbrocca, Defendants– Appellants.**

**No. 1 CA–CV 92–0473.**

Court of Appeals of Arizona, Division 1, Department B.

July 21, 1994.

Review Denied Dec. 20, 1994.

11. The Honorable Frank T. Galati, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz. Const. art. VI, § 3.

Polese, Hiner & Nolan, P.A. by Patricia E. Nolan, Lynn M. Allen, Phoenix, for plaintiff-appellee.

James P. Pulito, Phoenix, for defendants-appellants.

## OPINION

WEISBERG, Presiding Judge.

■ Appellants Romano and Rosanne Sbrocca ("Sbroccas") appeal from the trial court's judgment of $217,223.71 in favor of appellee Provident National Assurance Company ("Provident") based on a written guaranty. The issue we decide is whether the nonrecourse nature of the underlying promissory note prevents a mortgagee from pursuing collection remedies against the guarantors of that note. We hold that it does not.

### FACTS

Provident made a nonrecourse loan in the original principal amount of $4,500,000.00 ("Note") to an Arizona general partnership known as Terra Plaza Joint Venture Partnership ("Terra"). Terra eventually defaulted under the Note and Deed of Trust, and Provident noticed a Trustee's Sale of the subject property.

Prior to the Trustee's Sale, Rothmans & Company Limited ("RCL") expressed an interest in purchasing the property by assuming the existing obligation with some modifications. RCL executed a Loan Modification and Assumption Agreement wherein it assumed the obligations of Terra under the Note. Provident, as a condition of RCL's assumption of the loan, required the Sbroccas, the principal owners of RCL, to personally guaranty an amount equal to the past-due interest and late charges that had accrued on the Terra loan ("Guaranty"). The Sbroccas executed the Guaranty in the maximum amount of $217,223.71.

RCL subsequently defaulted on the Note, and Provident foreclosed upon the real prop-

erty. After a sheriff's sale, the amount remaining due and payable under the Note was $2,814,436.97. Provident then filed this action seeking to collect the sum of $217,223.71 from the Sbroccas pursuant to the Guaranty.

The parties filed cross motions for summary judgment, and the trial court granted judgment in favor of Provident. This appeal followed.

### DISCUSSION

There are no facts in dispute. The only issue to be decided is the legal effect of the Guaranty.

The Sbroccas first argue that they have no obligation under the Guaranty because the scope of their guaranty was to be identical to the obligations which RCL had under the Note. They base their argument on the following language in paragraph one of the Guaranty:

The undersigned [Sbroccas] do hereby jointly and severally and unconditionally guaranty full payment and performance of ROTHMAN [sic] & COMPANY LIMITED ("Maker") under the terms of that certain Promissory Note dated May 8, 1986 . . .

Therefore, the Sbroccas reason, the nonrecourse nature of the Note runs also to the Guaranty they provided, and Provident cannot now seek a deficiency from the Sbroccas under that Guaranty. The Sbroccas maintain that, because of the nonrecourse nature of the Note, the Guaranty they signed was "mere window dressing" and "never had any substance." We disagree.

■ Construction of a contract is a question of law for the court. *Maganas v. Northroup*, 135 Ariz. 573, 575, 663 P.2d 565, 567 (1983). A contract must be construed so that every part is given effect. *Gesina v. General Electric Co.*, 162 Ariz. 39, 45, 780 P.2d 1380, 1386 (1989). Each section of an agreement must be read in relationship to each other to bring harmony, if possible, among all parts of the writing. *Id.*

■ The Sbroccas' interpretation of their liability under the Guaranty would render it meaningless *ab initio*. We will not construe

a contract so as to render it meaningless. *Chandler Medical Bldg. Partners v. Chandler Dental Group,* 175 Ariz. 273, 277, 855 P.2d 787, 791 (1993). Also, the Sbroccas' interpretation of paragraph one of the Guaranty directly conflicts with the following Guaranty language:

Paragraph 2:

The obligations of the undersigned pursuant to this Guaranty are joint and several and *independent of the obligations of Maker or of Terra Plaza Joint Venture Partnership ("Terra") and a separate action or actions may be brought and prosecuted against the undersigned* regardless of whether an action is brought against Maker or Terra or whether either of them are joined in any such action or actions ...

\* \* \* \* \* \*

Paragraph 3:

The undersigned waive any· right to require Holder of the Note *to proceed against Maker or Terra or proceed against or exhaust security for the indebtedness evidenced hereby* or pursue any other remedy in the Holder's power whatsoever. (emphasis added.)

By this clear and unambiguous language, the Sbroccas expressly waived any right to require Provident to exhaust the collateral or even to proceed against RCL prior to seeking enforcement of the Guaranty. *See First National Bank v. Bennett Venture, Ltd.,* 130 Ariz. 562, 565–66, 637 P.2d 1065, 1068–69 (App.1981). Clearly, any rights that Provident may or may not have had against RCL did not necessarily determine the rights that Provident had against the Sbroccas.

Moreover, the record indicates that Provident refused to allow RCL to assume the Note on the property unless the Sbroccas personally guaranteed the amount of the late payments and interest that had accrued on the Note. The Sbroccas agreed to guaranty "full payment and performance" of RCL, and Provident's remedies under the Guaranty were not limited to the foreclosure of the property. In order to harmonize and give effect to the Guaranty as a whole, that document must be read to provide that Provident may collect the deficiency from the Sbroccas even though it cannot collect such deficiency from RCL. "Any other construction of the contract would be exalting form over substance and would render the guaranty substantially meaningless and valueless from the standpoint of the entire collateral package bargained for ̦by plaintiff." *First Interstate Bank v. Colcott,* 833 P.2d 876, 878 (Colo.App. 1992).

The Sbroccas next argue that, because RCL no longer owes any debt to Provident, it would be improper to impose a greater liability on them, as guarantors, than on RCL as payor under the Note. We disagree.

By guarantying the repayment of a nonrecourse note, the Sbroccas implicitly consented to liability greater than that of the payor. The nature and extent of a guarantor's liability depends upon the terms of the contract. *See Kintner v. Wolfe,* 102 Ariz. 164, 426 P.2d 798 (1967); 38 C.J.S. *Guaranty* § 43 (1943) (contract of guaranty may provide for greater liability than that of principal debtor). A guaranty contract is separately enforceable and independent of the obligation of the principal debtor. *See e.g.,* A.R.S. § 12–1566(E); *Flori Corp. v. Fitzgerald,* 167 Ariz. 601, 810 P.2d 599 (App.1990) (guaranty enforceable although suit against principal debtor was time-barred). A guaranty may provide for greater liability than that of the principal debtor. *FDIC v. University Anclote, Inc.,* 764 F.2d 804, 807 (11th Cir.1985).

Several courts in other jurisdictions have considered whether a guarantor of a nonrecourse note can have greater liability than the principal debtor. These courts have uniformly held that the guarantor of a nonrecourse loan can have greater liability than the primary obligor because the guaranty itself imposes a separate liability. *RTC v. Northpark Joint Venture,* 958 F.2d 1313, 1321 (5th Cir.1992) (guarantors liable for unsatisfied indebtedness after foreclosure even though promissory note was nonrecourse); *FDIC v. University Anclote,* 764 F.2d at 806–07 (although note was nonrecourse, because guaranty was unconditional and note allowed creditor to declare entire amount due on default, guarantor was liable); *First Interstate Bank v. Colcott,* 833 P.2d at 878

(guarantor's liability under unconditional guaranty was not limited by nonrecourse nature of note); *Guirlinger v. Goldome Realty Credit Corp.*, 593 So.2d 1135, 1137 (Fla.App. 1992) (nonrecourse nature of note did not prevent mortgagee from pursuing remedies on guaranty).

A contract of guaranty may provide for greater liability than that of the principal debtor [citation omitted]. [Guarantor's] unconditional guaranty of the non-recourse obligation is precisely such an undertaking. Any other construction of the contract would be elevating form over substance, and, as the district court noted, would "declare that the parties originally involved in the negotiation of the guaranty engaged in the drafting of an elaborate agreement which was, from its inception, meaningless and without value."

*FDIC v. University Anclote*, 764 F.2d at 807.

■ The terms of the Guaranty at issue here impose a limited liability on the Sbroccas for the "full payment and performance" of RCL under the terms of the Note. By guarantying the repayment of a nonrecourse note, the Sbroccas implicitly consented to liability greater than that of RCL under the Note.

Moreover, RCL's debt to Provident has not been repaid in full. While the nonrecourse nature of the Note prevents Provident from executing on other assets of RCL, such limitation does not mean that the original debt has been extinguished. Although we have been unable to find any Arizona authority addressing this issue, courts in other jurisdictions have soundly rejected arguments similar to those raised by the Sbroccas. *See RTC v. Northpark*, 958 F.2d 1313; *FDIC v. University Anclote, Inc.*, 764 F.2d 804; *Guirlinger v. Goldome Realty Credit Corp.*, 593 So.2d 1135; *First Interstate Bank v. Colcott*, 833 P.2d 876; *Overland Park Savings & Loan v. Miller*, 243 Kan. 730, 763 P.2d 1092 (1988).

For example, in *RTC v. Northpark*, a bank made a nonrecourse loan to a joint venture with repayment of the loan secured by a deed of trust upon real property. In addition, the individuals who formed Northpark executed guaranties to pay up to a specific amount of Northpark's indebtedness. Northpark later defaulted and the bank sold the property at a foreclosure sale. Because a deficiency remained after the sale, the RTC, as successor-in-interest to the bank, filed suit against the guarantors. The trial court ruled that an indebtedness remained on the note after foreclosure, and that the guarantors were liable. The 5th Circuit Court of Appeals agreed and held:

The fact that a debt is non-recourse does not change the fact that the debtor is "in debt" to a creditor. Even though Northpark cannot be held liable for the amount of debt in its promissory note, it still incurred an "indebtedness" when it signed the note. The amount of the indebtedness is the total sum reflected in the note, plus interest and other costs.

958 F.2d at 1320; *see also FDIC v. University Anclote*, 764 F.2d at 806 (the principal debtor's "indebtedness" is the total sum reflected in the note, plus interest and other costs); *First Interstate v. Colcott*, 833 P.2d at 878 ("merely because [the principal debtor] could not be sued for a deficiency judgment does not mean that it did not incur an indebtedness for which [the guarantor] was liable in the event of default").

The fact that the Note was nonrecourse as to RCL does not change the fact that, despite the foreclosure, RCL remained indebted to Provident. In the instant case, the Note was for a principal amount of $4,500,-000.00. After foreclosure and sale of the property, over $2,814,000.00 remained due on the Note. Because the sale of the property did not repay Provident all the amounts due under the Note, RCL remains indebted to Provident. Consequently, the Sbroccas, as guarantors, are liable for the deficiency up to the maximum amount of the Guaranty.

## CONCLUSION

The trial court is affirmed. The Sbroccas have guaranteed the obligations of RCL under the Note. The nonrecourse nature of the Note simply precludes Provident from collecting the foreclosure deficiency from RCL. RCL remains indebted to Provident, however, and the Sbroccas, as guarantors, are lia-

ble for any deficiency up to the maximum amount set forth in the Guaranty.

Provident is entitled to attorney's fees pursuant to A.R.S. § 12–341.01. Attorney's fees will be awarded upon compliance with Rule 21, Ariz.R. of Civ.App.P.

TOCI and CONTRERAS, JJ., concur.