[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11003

Non-Argument Calendar

_____

BREWFAB, LLC,

                                        Plaintiff-Counter Defendant-
                                                            Appellee,

*versus*

3 DELTA, INC.

                                        Defendant-Counter Claimant-
                                                  Third Party Plaintiff,

GEORGE RUSSO,

2                    Opinion of the Court                    22-11003

                                        Defendant-Appellant,


RICK CURETON,
an individual,

                                        Third Party Defendant.


                        _____

             Appeal from the United States District Court
                   for the Middle District of Florida
               D.C. Docket No. 8:20-cv-02031-VMC-SPF

                        _____

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

        George Russo appeals from the district court's order grant-
ing summary judgment in favor of BrewFab, LLC.  As relevant to
this appeal, BrewFab asserted a claim against Russo for breach of a
personal guaranty.  In support of its claim, BrewFab alleged that
Russo, the president of 3 Delta, Inc., promised via text message to
pay BrewFab for 3 Delta's outstanding invoices and for all future
work performed by BrewFab.  After discovery, the parties cross-
moved for summary judgment.  BrewFab asserted that Russo's text
message was an enforceable personal guaranty and that Russo
breached that guaranty, whereas Russo asserted that the text

message was not a personal guaranty and that it did not satisfy Florida's statute of frauds.

The district court granted BrewFab's motion for summary judgment and denied Russo's motion for summary judgment, determining that the relevant text message was a personal guaranty and satisfied Florida's statute of frauds. After careful review, we affirm the district court's order.

## I.    BACKGROUND

In 2018, 3 Delta hired BrewFab to build a machine for extracting cannabidiol oil. 3 Delta and BrewFab did not have a written contract. Instead, 3 Delta and BrewFab proceeded under an oral agreement whereby BrewFab sent 3 Delta invoices for the work it performed, and 3 Delta paid those invoices.

In December 2019, 3 Delta stopped paying BrewFab's invoices. In turn, BrewFab stopped shipping equipment to 3 Delta and stopped working on the extraction machine.

On January 30, 2020, Russo and other representatives of 3 Delta had a conference call with BrewFab's owners to discuss the outstanding invoices and the work stoppage. After the conference call, Russo sent the following text message to Rick Cureton, one of BrewFab's owners:

> As per our conversation on Jan 30th 2020 I george Russo from 3 Delta do promise to pay brew fab in full all outstanding bills as of this date and all agreed upon

work done for 3 delta future forward. I thank you for your patience.

Thereafter, BrewFab resumed work and shipped additional equipment to 3 Delta. But neither 3 Delta nor Russo paid the past-due invoices and, on February 12, 2020, 3 Delta instructed BrewFab to stop all work.

In August 2020, BrewFab initiated the underlying action to recover the unpaid invoices. In its amended complaint, among other claims, BrewFab asserted claims against 3 Delta for breach of contract and accounts stated. BrewFab also asserted a claim against Russo for breach of his personal guaranty—i.e., the text message he sent to Rick Cureton.

After discovery, Russo moved for summary judgment on BrewFab's breach of personal guaranty claim. In his motion, Russo asserted that his text message to Cureton was not a personal guaranty and that he sent the text message in his capacity as an officer of 3 Delta. Russo argued that he sent the text message because "there was no written contract between [BrewFab] and 3 Delta that obligated 3 Delta to pay [BrewFab's] existing or future invoices, which was a serious concern" for BrewFab. And, according to Russo, the text message was intended "to provide written confirmation of 3 Delta's agreement to pay [BrewFab's] existing and future invoices." Russo also asserted that the text message did not satisfy Florida's statute of frauds and that it was not supported by consideration.

BrewFab cross-moved for summary judgment on its breach of personal guaranty claim, asserting that Russo's text message constituted an unambiguous and enforceable personal guaranty agreement. Among other arguments, BrewFab also asserted that Russo's personal guaranty was supported by consideration—i.e., the work BrewFab performed for 3 Delta after Russo sent the text message.

The district court granted BrewFab's motion for summary judgment and denied Russo's motion for summary judgment. The district court determined that Russo's "text message acknowledge[d] that 3 Delta was . . . indebted to BrewFab" and, "in an effort to ensure that BrewFab continued working, [Russo] promised to pay for both (1) BrewFab's outstanding invoices owed by 3 Delta and (2) all agreed upon work for 3 Delta in the future." The district court held that Russo's text message was a personal guaranty because its plain language acknowledged that "Russo would personally finance 3 Delta's past and future invoices."[1] The district court further held that Russo's text message was an unambiguous and enforceable personal guaranty that satisfied Florida's statute of frauds because: (1) the language "I george Russo from 3

---

[1] The district court further reasoned that the text message was a personal guaranty because "[i]nterpreting Russo's guaranty as a corporate guaranty would create an 'absurd result' that would render the guaranty null and void as 3 Delta is already liable for its existing debts." But we need not address this alternative basis for the district court's holding to resolve the issues raised on appeal.

Delta" was an electronic signature under Florida law; (2) that language indicated that Russo signed the text message in his personal capacity; and (3) the text message was supported by consideration, i.e., "BrewFab's voluntary return to work and delivery of equipment." This appeal followed.[2]

## II.    STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*." *Wadley Crushed Stone Co. v. Positive Step, Inc.*, 34 F.4th 1251, 1256 (11th Cir. 2022). "We grant summary judgment 'when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 911 (11th Cir. 2007)). Whether a contract is ambiguous and questions of contract interpretation are pure questions of law that we also review *de novo*. *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019).

## III.    ANALYSIS

Under Florida law, "[a] valid contract arises when the parties' assent is manifested through written or spoken words, or

---

[2] After the district court granted summary judgment, 3 Delta and BrewFab stipulated to a consent judgment, in which 3 Delta conceded that BrewFab was entitled to recover $388,117.59. Accordingly, the district court entered final judgment for BrewFab. Russo then appealed the district court's summary judgment order.

'inferred in whole or in part from the parties' conduct.'"[3]  *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. Dist. Ct. App. 2011) (quoting *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. Dist. Ct. App. 1997)). And "[t]he parties' intention governs contract construction and interpretation." *Whitley v. Royal Trails Prop. Owners' Ass'n*, 910 So. 2d 381, 383 (Fla. Dist. Ct. App. 2005).

"When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." *Hatadis v. Achieva Credit Union*, 159 So. 3d 256, 259 (Fla. Dist. Ct. App. 2015) (quoting *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. Dist. Ct. App. 2009)).  "Where a contract is clear and unambiguous, it must be enforced pursuant to its plain language." *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015).  In such a situation, "the language itself is the best evidence of the parties' intent, and its plain meaning controls." *Crawford v. Barker*, 64 So. 3d 1246, 1255 (Fla. 2011) (quoting *Richter v. Richter*, 666 So. 2d 559, 561 (Fla. Dist. Ct. App. 1995)).  But "[w]here the language used in a contract is ambiguous or unclear, the court may consider extrinsic matters . . . to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties." *Waveblast Watersports II Inc. v. UH-pompano, LLC*, 291 So.

---

[3] The parties agree that Florida law applies to the relevant contract issues raised on appeal.

3d 657, 661 (Fla. Dist. Ct. App. 2020) (second alteration in original) (quoting *Vienneau v. Metro. Life Ins. Co.*, 548 So. 2d 856, 859 (Fla. Dist. Ct. App. 1989)).

If the terms of the contract are ambiguous and disputed, "an issue of fact is presented as to the parties' intent which cannot properly be resolved by summary judgment." *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. Dist. Ct. App. 2001) (quoting *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So. 2d 218, 219 (Fla. Dist. Ct. App. 1987)). But "[a] contract may be interpreted as a matter of law when the ambiguity can be resolved by undisputed parol evidence of the parties' intent." *Waveblast*, 291 So. 3d at 661 (quoting *Life Care Ponte Vedra, Inc. v. H.K. Wu*, 162 So. 3d 188, 192 (Fla. Dist. Ct. App. 2015)).

Here, the relevant contract is the text message Russo sent to Cureton. On appeal, Russo argues that the text message: (1) is ambiguous as to whether it constitutes a personal guaranty; and (2) is not a valid personal guaranty under Florida's statute of frauds. We consider Russo's arguments in turn.

### A.    Personal Guaranty

"A guaranty is a promise to pay the debt of another on the default of the person primarily liable for payment or performance." *Fort Plantation Invs., LLC v. Ironstone Bank*, 85 So. 3d 1169, 1171 (Fla. Dist. Ct. App. 2012). In other words, "[a] guaranty is a collateral promise to answer for the debt or obligation of another." *FDIC v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir. 1985). Like

other contracts governed by Florida law, if a guaranty agreement is unambiguous, "the plain language of the contract governs and there is no need for parol evidence of the parties' intent." *Haggin v. Allstate Invs., Inc.*, 264 So. 3d 951, 954 (Fla. Dist. Ct. App. 2019).

On appeal, Russo asserts that the relevant text message is "ambiguous as to whether . . . it was intended to be a personal guaranty on the part of Mr. Russo, or whether it was sent solely with the intention to memorialize the parties' verbal agreement as to 3 Delta's obligations to pay BrewFab." Russo further asserts that the text message is ambiguous as to whether it was sent in an individual or representative capacity.

As a preliminary matter, we agree that the text message is ambiguous, but not for the reasons Russo suggests. As noted, a guaranty is a promise to pay *the debt of another* upon that person's default. *See Fort Plantation Invs.,* 85 So. 3d at 1171; *see also Univ. Anclote*, 764 F.2d at 806. Here, the text message merely states that "I george Russo from 3 Delta do promise to pay brew fab in full *all outstanding bills as of this date* and all agreed upon work done for 3 delta future forward." (Emphasis added). The text message does not indicate that the "outstanding bills" Russo promised to pay were owed by another.

But, before the district court, Russo acknowledged that the text message referred to the outstanding invoices 3 Delta owed BrewFab. And, on appeal, Russo has made the same concession. Because BrewFab agrees that the text message's reference to "outstanding bills" refers to the invoices 3 Delta owed BrewFab (, there

is no dispute that this term refers to 3 Delta's debt, i.e., a debt owed by someone other than Russo. We may therefore interpret the text message as follows: "I george Russo from 3 Delta do promise to pay brew fab in full all outstanding bills *owed by 3 Delta* as of this date and all agreed upon work done for 3 Delta future forward."[4] *See Waveblast*, 291 So. 3d at 661 ("[A] contract may be interpreted as a matter of law when the ambiguity can be resolved by undisputed parol evidence of the parties' intent." (quoting *Life Care*, 162 So. 3d at 192)).

With that interpretation in mind, we turn to the arguments Russo has raised on appeal. As to whether the meaning of the text message is ambiguous, Russo asserts that the text message is ambiguous because it could be interpreted as a personal guaranty or as "memorializ[ing] the parties' verbal agreement as to 3 Delta's obligations to pay BrewFab." But the plain language of the text message does not support the latter interpretation. The language, "I george Russo from 3 Delta do promise to pay brew fab in full all outstanding bills [owed by 3 Delta] as of this date," plainly means that Russo promised to pay 3 Delta's then outstanding bills in full. *See Crawford,* 64 So. 3d at 1255 ("Where the terms of a contract

---

[4] The district court found that the text message was unambiguous based, in part, on its finding that the text message indicated that Russo "promised to pay for . . . BrewFab's outstanding invoiced owed by 3 Delta." While that finding relied on parol evidence to interpret the term "all outstanding bills," as noted, the parties do not dispute the meaning of that term, and we may affirm for any reason supported by the record. *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020).

are clear and unambiguous, the parties' intent must be gleaned from the four corners of the document."). And because that language is unambiguous, Russo's argument that, in context, the text message was intended to alleviate BrewFab's concern that 3 Delta never provided a written promise to pay BrewFab, is irrelevant.[5] *See Haggin*, 264 So. 3d at 954–55 (interpreting a guaranty agreement commensurate with its "clear and unambiguous language" and holding that the trial court erred in considering parol evidence to interpret that unambiguous language).

As to whether it is unclear that Russo sent the message in his personal capacity, Russo asserts that the language "I george Russo from 3 Delta" is ambiguous because that language could mean that Russo sent the message "in his corporate capacity as a representative of 3 Delta." In Florida, "[g]enerally, a signature preceded by the word 'by' and accompanied by *descriptio personae*, that is, language identifying the person signing the document as a corporate officer or something similar, does not create personal liability for the person signing a contract to which he or she is not a specified party." *Robert C. Malt & Co. v. Carpet World Distribs., Inc.*, 763 So. 2d 508, 510 (Fla. Dist. Ct. App. 2000). But the language "I

---

[5] Russo also summarily asserts that the language "[a]s per our conversation on Jan. 30th 2020" necessarily invites the consideration of parol evidence. Because Russo cites no case law in support of that assertion, and he did not further develop this argument before the district court or on appeal, this argument has not been fairly raised, and we will not consider it. *See Nat'l Mining Ass'n v. United Steel Workers*, 985 F.3d 1309, 1326 n.15 (11th Cir. 2021).

george Russo from 3 Delta" does not indicate that Russo was sign-ing the guaranty in his capacity as president of 3 Delta. Indeed, the at-issue guaranty does not contain any *descriptio personae* for Russo. Instead, as the district court correctly held, the language "'from 3 Delta' merely identifies Russo as an individual generally affiliated with 3 Delta," it does not identify Russo as a corporate officer signing the guaranty in a representative capacity.

For these reasons, we reject Russo's ambiguity arguments. Accordingly, we affirm the district court's decision that Russo's text message was a personal guaranty to pay the debt 3 Delta owed BrewFab.

## B.    Statute of Frauds

Florida's statute of frauds provides that

"[n]o action shall be brought . . . whereby to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the agreement or promise upon which such action shall be brought, or some note or memo-randum thereof shall be in writing and signed by the party to be charged therewith . . . ."

Fla. Stat. § 725.01. Moreover, "[t]o comply with [Florida's statute of frauds], the writing must contain the essential terms of the trans-action." *First Guar. Corp. v. Palmer Bank & Tr. Co. of Fort Myers*, 405 So. 2d 186, 188 (Fla. Dist. Ct. App. 1981). But "[t]here is no definitive list of essential terms that must be present and certain to

satisfy the statute of frauds.  Rather, the essential terms will vary widely according to the nature and complexity of each transaction and will be evaluated on a case by case basis." *Ge Lin v. Ecclestone Signature Homes of Palm Beach, LLC*, 59 So. 3d 267, 270 (Fla. Dist. Ct. App. 2011) (quoting *Socarras v. Claughton Hotels, Inc.*, 374 So.2d 1057, 1060 (Fla. Dist. Ct. App. 1979)).

On appeal, Russo argues that the guaranty agreement does not satisfy the statute of frauds because: (1) he did not sign the guaranty agreement; and (2) the guaranty agreement is missing an essential term, i.e., consideration.[6]

As to Russo's first argument, under Florida's Electronic Signature Act, "an electronic signature may be used to sign a writing and shall have the same force and effect as a written signature." Fla. Stat. § 668.004.  The Electronic Signature Act defines an "electronic signature" as "any letters, characters, or symbols, manifested

---

[6] In addition to opposing Russo's arguments, BrewFab asserts that Russo waived the argument that the guaranty agreement did not satisfy Florida's statute of frauds because it was unsigned.  But, in his motion for summary judgment, Russo asserted that the text message did not satisfy the statute of frauds because it was not an actual document signed and executed by Russo.  And, while the district court noted that Russo "did not meaningfully advance" that argument, the district court did address and reject the merits of his argument.  Because Russo presented this argument in a "way as to afford the district court an opportunity to recognize and rule on it," Russo did not waive the argument. *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1336–37 (11th Cir. 2017) (quoting *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990)).

14                  Opinion of the Court                  22-11003

by electronic or similar means, executed or adopted by a party with an intent to authenticate a writing." *Id.* § 668.003. And the Act provides that "[a] writing is electronically signed if an electronic signature is logically associated with such writing." *Id.*

Here, the language "I george Russo from 3 Delta" constitutes an electronic signature under Florida law. That language satisfies the definition of an electronic signature, i.e., "letters, characters, or symbols" intended to "authenticate a writing." § 668.003. And that language is "logically associated with" the relevant guaranty agreement, because "I george Russo from 3 Delta" precedes Russo's promise to pay 3 Delta's debt. Therefore, the district court did not err in holding that the guaranty agreement was electronically signed by Russo.[7]

As to Russo's second argument, "[a] guaranty . . . , like all contracts, must be supported by consideration." *Texaco, Inc. v.*

---

[7] Russo also suggests that a text message cannot satisfy Florida's statute of frauds and that an electronic signature cannot be contained in the body of an agreement. As to whether a text message can satisfy Florida's statute of frauds, "[t]o satisfy the statute, a note or memorandum may take almost any possible form." *Kolski ex rel. Kolski v. Kolski*, 731 So. 2d 169, 171 (Fla. Dist. Ct. App. 1999). Indeed, one Florida appellate court previously found that a telegram—a precursor to text messages—could "constitute . . . sufficient memoranda." *Heffernan v. Keith*, 127 So. 2d 903, 904 (Fla. Dist. Ct. App. 1961). As to whether an electronic signature can be found in the body of an agreement, Florida's Electronic Signature Act does not specify that an electronic signature must come at the end of an agreement. And Russo's conclusory assertion, without authoritative support, cannot defeat the Electronic Signature Act's plain language.

*Giltak Corp.*, 492 So. 2d 812, 814 (Fla. Dist. Ct. App. 1986).  Therefore, consideration is an essential term of Russo's guaranty agreement.  And, whereas here, "[a] guaranty [was] executed subsequent to the principal contract[,] and [was] not a part of the same transaction," the guaranty "must be supported by . . . new consideration." *Id*.

Here, Russo promised to pay BrewFab for both "all outstanding bills as of this date" and for "all agreed upon work for 3 delta future forward."  Like the guaranty agreement in *Texaco*, which the Florida appellate court held was supported by new consideration, Russo's promise was a unilateral contract that covered future indebtedness for future work.  *Cf. id.* at 814.  And Russo's promise became a binding guaranty agreement when BrewFab accepted Russo's promise by resuming work and sending 3 Delta additional equipment, after Russo sent the text message.  *Cf. id.* at 814–15.  Russo does not contest that the work BrewFab performed, after he sent the text message, was "agreed upon work" and he does not assert that BrewFab has a pre-existing obligation to continuously perform work on 3 Delta's credit.  Therefore, the district court did not err in holding that BrewFab's return to work and delivery of equipment, after Russo sent the text message, constituted consideration in exchange for the guaranty agreement.  *See id.*; *see also Gibbs v. Am. Nat. Bank of Jacksonville*, 155 So. 2d 651, 655 (Fla. Dist. Ct. App. 1963) (holding that a guaranty agreement was supported by consideration and, therefore, affirming summary

judgment where the agreement covered "future advances as well as existing indebtedness").

## IV.    CONCLUSION

For all these reasons, we affirm the district court's order granting summary judgment for BrewFab.

**AFFIRMED.**