IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| FIRST CREDIT UNION, an Arizona corporation, | ) ) ) | 2 CA-CV 2013-0005 DEPARTMENT A |
| Plaintiff/Appellee, | ) ) | O P I N I O N |
| v. | ) ) ) | |
| CRAIG R. COURTNEY and JANINE C. COURTNEY, a married couple, | ) ) ) | |
| Defendants/Appellants. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20111505

Honorable Ted B. Borek, Judge
Honorable Jan E. Kearney, Judge

AFFIRMED

Lewis and Roca LLP
  By D. Douglas Metcalf and Jeffrey L. Sklar                              Tucson
                                        Attorneys for Plaintiff/Appellee

Stubbs & Schubart, P.C.
  By G. Lawrence Schubart                                              Tucson
                                  Attorneys for Defendants/Appellants

H O W A R D, Chief Judge.

¶1 Appellants Craig and Janine Courtney ("the Courtneys") appeal from the trial court's grant of partial summary judgment and from its entry of a deficiency judgment against them. On appeal, they argue the court erred by not dismissing First Credit Union's ("First Credit") complaint as premature, by not finding that an anti-deficiency statute barred a deficiency judgment, and by entering a deficiency judgment against them when the underlying indebtedness had been extinguished. Because we find no error, we affirm.

**Factual and Procedural History**

¶2 The parties largely agree on the underlying facts but dispute their legal effect. In December 2006, Orange Grove I, L.L.C. ("Borrower") entered into a construction loan agreement with First Credit for the principal amount of $3.56 million. Borrower executed a promissory note and a deed of trust in First Credit's favor, secured by real property in northwest Tucson known as the Appian Estates at Casas Adobes ("Appian Estates"). First Credit also required the Courtneys to sign a "Commercial Guaranty" that made them personally liable for the "Indebtedness." The Commercial Guaranty contained numerous waivers of legal defenses to its enforcement.

¶3 In May 2009, Borrower and First Credit executed a "Change in Terms Agreement" that provided additional security for the loan, stipulated to a lower principal amount due, and granted an extension of time for payment of the loan. The Courtneys also signed the agreement. The new security consisted of a residential home on less than 2.5 acres of land, also in northwest Tucson, which the parties refer to as the "Citrine Property." The Citrine Property was subject to preexisting liens totaling about $52,000.

¶4 Borrower subsequently defaulted on the construction loan. First Credit then requested a trustee's sale of the Appian Estates property. At the sale held on February 16, 2011, First Credit acquired the Appian Estates property for a credit bid of $2.4 million. Nine days later, on February 25, 2011, First Credit sued the Courtneys, based on the Commercial Guaranty, for a deficiency judgment on the loan. It chose to forgo suing Borrower or requesting a sale of the Citrine Property.

¶5 The trial court granted partial summary judgment to First Credit on the issue of liability and proceeded to trial on the fair market value of the Appian Estates property and the amount of any deficiency. At trial, the Courtneys raised additional defenses to liability based on A.R.S. § 33-814. First Credit responded, contending the Courtneys had misinterpreted the statute and had, in any event, waived defenses based on § 33-814.

¶6 After taking the case under advisement, the trial court found that the waivers in the guaranty precluded the Courtneys' liability defenses. The court also found that the fair market value of the property was less than its sale price, and therefore based the deficiency award on the difference between the sale price and the debt. It entered a deficiency judgment in favor of First Credit in the amount of $1,355,039.28 plus interest at the rate of eighteen percent per year, which was the amount agreed upon in the Change in Terms Agreement. The court also awarded First Credit attorney fees of $95,342.25. The Courtneys appeal. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

3

¶7        We will uphold the trial court if it is legally correct for any reason. *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 193, 836 P.2d 404, 406 (App. 1992). Although the trial court decided this case based on the validity of the waivers in the Guaranty, the parties fully briefed below and here the Courtneys' proposed interpretation of § 33-814. We resolve this case by interpreting § 33-814 and the Guaranty without deciding whether, in general, a guarantor can waive protections afforded under that statute.[1]

## Prematurity

¶8        The Courtneys initially argue First Credit brought its action for deficiency prematurely because it did not subject the Citrine Property to a trustee sale. They rely on § 33-814(B), which gives the creditor ninety days after the sale of the final piece of trust property to bring its action. The Courtneys also rely on "general legal principles" that they claim make First Credit's action for deficiency premature as merely speculative. First Credit responds that the waivers contained in the guaranty agreement preclude this defense and that § 33-814(C) allowed it to sue without foreclosing on the Citrine Property.

¶9        We review issues of contractual and statutory interpretation de novo. *See Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, ¶ 5, 52 P.3d 786, 788 (App. 2002). We interpret statutes to fulfill the intent of the legislature. *Zamora v. Reinstein*,

---

[1]This court has determined that a borrower may not prospectively waive the protection of the anti-deficiency provisions of this statute, but specifically left open whether a guarantor could do so. *See Parkway Bank & Trust Co. v. Zivkovic*, ___ Ariz. ___, ¶¶ 14-17 & n.5, 304 P.3d 1109, 1112-14 & n.5 (App. 2013).

185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996). We look first to the plain language of the statute because it provides the most reliable measure of a statute's meaning. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 6, 181 P.3d 219, 225 (App. 2008). When the statutory language "is clear and unambiguous," we look no further and "assum[e] the legislature has said what it means." *Id.* To the extent, however, that a guaranty agreement contains ambiguity, we generally construe it in favor of the guarantor. *Silver*, 203 Ariz. 217, ¶ 7, 52 P.3d at 789. As with all contracts, our primary goal is to give effect to the entire contract. *Provident Nat'l Assur. Co. v. Sbrocca*, 180 Ariz. 464, 465, 885 P.2d 152, 153 (App. 1994).

¶10 Section 33-814(C) provides as follows: "The obligation of a person who is not a trustor to pay . . . the balance due on a contract secured by a trust deed may be enforced, if the person has so agreed, in an action regardless of whether a trustee's sale is held." That statute, therefore, does not require First Credit to foreclose the lien against the Citrine Property at all. Thus, § 33-814(B)'s ninety-day provision, which the Courtneys claim makes this action premature, cannot have been intended by the legislature to postpone any action until after a non-judicial foreclosure of that property. Rather, § 33-814(B) is a limitation provision that requires any deficiency action be brought within ninety days of the trustee's sale of the last piece of the trust property.[2]

---

[2] Because § 33-814(C) specifically provides that a guarantor can agree that a deficiency action can commence without a sale of the collateral, we need not resolve whether a guarantor may generally waive § 33-814's protections.

5

¶11 Furthermore, the Courtneys have not advanced any reason § 33-814(C) should not apply when a portion of the collateral has been sold and a portion remains. In setting its time limitation, § 33-814(B) contemplates that a lender may not, in fact, sell all of its collateral:

> If a trustee's sale is a sale . . . pursuant to one of two or more trust deeds securing the same obligation, the ninety day time limitations of subsection A of this section shall begin on . . . the date of the trustee's sale of the last of the trust property to be sold.

Subsection (B) places no limitation on subsection (C) or any of the statute's other provisions. The plain language of the statute does not support the Courtneys' position.

¶12 Additionally, § 33-814(C) specifically allows the guarantor to agree that the creditor may collect the debt without selling the collateral. This right to waive defenses is consistent with the common law principles cited by the Courtneys. At common law, through a set of doctrines known as "suretyship defenses," a guarantor was protected against certain unilateral actions by the principal parties to a contract that could change a guarantor's rights or obligations. *Data Sales Co. v. Diamond Z Mfg.*, 205 Ariz. 594, ¶ 15, 74 P.3d 268, 272 (App. 2003).[3] Those protections included a guarantor's right to require the creditor to exhaust all collateral securing the debt obligation before pursuing the guarantor. *See Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 102, 800 P.2d 962, 968 (1990) (court follows Restatement absent contrary Arizona law); Restatement (Third) of

---

[3]Although Arizona law distinguishes between surety and guaranty contracts, *see, e.g.*, *McClellan Mortg. Co. v. Storey*, 146 Ariz. 185, 187-88, 704 P.2d 826, 828-29 (App. 1985), *Data Sales* concluded "suretyship defenses" also apply to guarantors, 205 Ariz. 594, ¶¶ 1, 14-16, 27, 74 P.3d at 269, 272, 274.

Suretyship & Guaranty §§ 37(1), 42(2)(b) (1996) (acts by creditor increasing guarantor's potential cost of performance reduce guarantor's liability; release of collateral by creditor reduces guarantor's liability). However, the common law is also "well settled that surety rights can be waived by contract." *Data Sales*, 205 Ariz. 594, ¶ 16, 74 P.3d at 272. Thus, the "nature and extent of a guarantor's liability depends upon the terms of the guaranty contract" and "we must give effect to its clear and unambiguous terms." *Silver*, 203 Ariz. 217, ¶ 7, 52 P.3d at 788-89.

¶13        In relevant part, the guaranty contract here expressly provides that "Guarantor waives any right to require [First Credit] . . . to proceed directly against or exhaust any collateral held by [First Credit] from Borrower . . . [or] to pursue any other remedy within [First Credit]'s power." This contractual provision is clear and unambiguous and by its plain language waives the Courtneys' defense. Therefore, under § 33-814(C), the Courtneys agreed to allow First Credit to sue without exhausting any collateral, including the Citrine Property, and the statute explicitly permits First Credit to do so. And because of the Courtneys' agreement, applying the common law principles yields the same result. *See Data Sales*, 205 Ariz. 594, ¶ 16, 74 P.3d at 272. The Courtneys' agreement is valid and binding on them. § 33-814(C); *see also Data Sales*, 205 Ariz. 594, ¶ 16, 74 P.3d at 272; *Silver*, 203 Ariz. 217, ¶ 7, 52 P.3d at 788-89. Accordingly, First Credit's action is not premature.

¶14        The Courtneys also argue that First Credit's damages are speculative until all of the collateral is sold and the action is therefore premature under the general law

concerning damages. But First Credit's damages are easily ascertainable because they are the amount still due on the note. Therefore, the damages are not speculative.

**Anti-Deficiency Statute**

¶15        The Courtneys also argue that the anti-deficiency protections of § 33-814(G) apply. Section 33-814(G) prohibits a deficiency action when certain residential trust property is sold through a trustee's sale. First Credit responds that this section does not apply. We review issues of statutory and contractual interpretation de novo. *See Silver*, 203 Ariz. 217, ¶ 5, 52 P.3d at 788.

¶16        Section 33-814(G) provides that

> If trust property of two and one-half acres or less which is limited to and utilized for either a single one-family or a single two-family dwelling is sold pursuant to the trustee's power of sale, no action may be maintained to recover any difference between the amount obtained by sale and the amount of the indebtedness and any interest, costs and expenses.

Section 33-729(A), A.R.S., prohibits deficiencies from mortgage foreclosures of the same type of property, but only applies to purchase money mortgages.

¶17        In *Baker v. Gardner*, our supreme court considered the scope of these statutes. 160 Ariz. 98, 770 P.2d 766, *supp. op.*, 160 Ariz. 105, 106, 770 P.2d 773, 774 (1989). It stated that "a creditor can elect to [forgo] foreclosure and sue on the note in all cases except those involving the mortgages and deeds of trust to which the anti-deficiency statutes apply." *Id.* Except in cases involving purchase money loans for collateral covered by § 33-814, when the creditor has not conducted a trustee's sale of the property, the creditor remains free to waive the security, sue directly on the note, and

8

obtain a deficiency judgment. *Id.* at 107, 770 P.2d at 775; *see also Mid Kansas Fed. Sav. & Loan Ass'n of Wichita v. Dynamic Dev. Corp.*, 167 Ariz. 122, 129, 804 P.2d 1310, 1317 (1991) (where deficiency statute does not apply, creditor remains free to waive security and bring debt action on note).

¶18          In this case, the parties agree the Appian Estates property, which was sold pursuant to trustee's sale, is a commercial property not within the purview of the anti-deficiency statute. They further agree the Citrine Property is a residential parcel of less than 2.5 acres and thus fits the statutory description of § 33-814(G). However, that subsection, as interpreted by *Baker*'s supplemental opinion, applies only after the property has been "'sold pursuant to the trustee's power of sale'" or the indebtedness is a purchase money loan. 160 Ariz. at 106, 770 P.2d at 774, *quoting* § 33-814(G).[4] No one disputes that First Credit never has foreclosed on the Citrine Property deed of trust through a trustee's sale, or that the loan here is not a purchase money loan as to that property. Therefore, § 33-814(G) did not apply and First Credit remained free to sue directly on the note. *See Baker, supp. op.*, 160 Ariz. at 107, 770 P.2d at 775; *Mid Kansas*, 167 Ariz. at 129, 804 P.2d at 1317.

¶19          The Courtneys nevertheless cite *Mid Kansas* for the proposition that a deficiency action "is prohibited after a trustee's sale on any deed of trust." 167 Ariz. at 126, 804 P.2d at 1314. But that portion of *Mid Kansas*, distinguishing between purchase money deeds of trust and any other deed of trust, simply clarified that the anti-deficiency

---

[4]At the time of the *Baker* decision, the relevant statutory provision was found at § 33-814(F). The provision has since been renumbered without any substantive changes. *See* 1990 Ariz. Sess. Laws, ch. 341, § 4.

statute must apply before it can bar a deficiency action. *Id.* Because we conclude the anti-deficiency statute does not apply here, that language does not help the Courtneys.

¶20 The Courtneys further quote language from *Baker* in which the court stated the legislature had abolished personal liability for those who grant deeds of trust encumbering property covered by the anti-deficiency statute. 160 Ariz. at 104, 770 P.2d at 772. We acknowledge that some language in *Baker* and *Mid Kansas* could be interpreted in that fashion. For example, the court stated in *Mid Kansas* that "when the holder of a non-purchase money deed of trust of the type described in A.R.S. § 33-814(G) forecloses by non-judicial sale, the statute protects the borrower from a deficiency judgment. The lender therefore may not waive the security and sue on the note." 167 Ariz. at 127, 804 P.2d at 1315. But the universal interpretation of these cases is that the non-purchase money lender who has not pursued a deed of trust sale may waive its security and sue on the note. *See, e.g.*, *Bank One, Arizona, N.A. v. Beauvais*, 188 Ariz. 245, 248-49, 934 P.2d 809, 812-13 (App. 1997) (under *Baker*, "decisive question in determining the rights of a creditor when a deed of trust is involved is whether the collateral secures a purchase-money or non-purchase-money obligation" and non-purchase money lenders may waive security and sue on note); *Resolution Trust Corp. v. Segal*, 173 Ariz. 42, 43-46, 839 P.2d 462, 463-66 (App. 1992) (where no deed of trust sale and no purchase money loan, lender free to waive security and sue on note); Michael A. Yarnell et al., *Ins and Outs of Foreclosures* § 8.6 (3d ed. 2010) (*Baker* "prohibits a lender from waiving its security and suing on the note, if it holds a purchase money lien

on qualifying residential property"). Moreover, this interpretation conforms with the plain wording of the statutes.

¶21 In the only case that reached an arguably contrary conclusion, *Tanque Verde Anesthesiologists L.T.D. Profit Sharing Plan v. Proffer Group, Inc.*, 172 Ariz. 311, 314, 836 P.2d 1021, 1024 (App. 1992), this court concluded that the lender's non-judicial release and reconveyance of the deed of trust in exchange for payment constituted a constructive trustee's sale that would implicate the protections of § 33-814(G). The court simply stated that "based on the holdings of *Baker* . . . and *Mid Kansas* . . . when Tanque Verde signed the deed of release and reconveyance, it thereby waived its right to seek a deficiency judgment." *Tanque Verde*, 172 Ariz. at 314, 836 P.2d at 1024. However, *Tanque Verde* is factually distinguishable. First Credit has neither released and reconveyed the Citrine Property deed of trust nor accepted payment in exchange for such a release and reconveyance. Moreover, it appears the lender's interest in that case was largely an assigned interest in a purchase money loan, implicating *Baker*'s holding, whereas here, First Credit does not have a purchase money deed of trust connected to the Citrine Property. Therefore, we will abide by the prevailing interpretation.

**Extinguishment of Borrower's Debt**

¶22 The Courtneys lastly argue that First Credit may not recover a deficiency judgment because the underlying debt, that is, the Indebtedness, has been extinguished by operation of § 33-814(D). They reason the Guaranty only renders them liable for the Indebtedness, which is defined as the "Borrower's Indebtedness to [First Credit]." Because First Credit did not sue Borrower within ninety days, they conclude it no longer

is able to do so under § 33-814(D) and Borrower's Indebtedness is extinguished. And because that debt is extinguished, they reason, their debt also has been discharged. First Credit responds that the Courtneys waived this defense in the guaranty agreement and that they are again misinterpreting the statute. We review de novo whether the trial court correctly applied the law in granting summary judgment in favor of First Credit on this issue. *See Silver*, 203 Ariz. 217, ¶ 5, 52 P.3d at 788.

¶23　　　We interpret a contract to fulfill the intention of the parties. *Taylor v. State Farm Mut. Auto Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). We construe the contract as a whole and do not render any portion of it meaningless. *Provident Nat'l Assur. Co. v. Sbrocca*, 180 Ariz. 464, 465, 885 P.2d 152, 153 (App. 1994). When interpreting a statute, we look first to the plain language because it provides the most reliable measure of a statute's meaning. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 6, 181 P.3d 219, 225 (App. 2008). When the meaning is plain from the statutory language, we look no further and assume the legislature meant what it said. *See id.*

¶24　　　The Courtneys' argument misconstrues the parties' intent concerning their liability as evidenced by the Guaranty. The guaranty contract provides that the Courtneys waived any right to require the lender "to resort for payment or to proceed directly or at once against any person, including Borrower." They further waived any suretyship defense based on "any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights . . . including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging

12

the Indebtedness" and any defense that would arise "by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness." They also waived "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness." The parties could not have intended that the provision defining Indebtedness required that they be released from any liability if Borrower's liability was released because that interpretation would render all the other provisions concerning a waiver of that right meaningless. Accordingly, we reject the Courtneys' interpretation of the Guaranty.

¶25 The Courtneys contend, however, that § 33-814(D) mandates a different result. They read subsection (D) together with subsection (A) to mean that even if a creditor maintains an action against a guarantor within the ninety-day window provided in subsection (A), if they do not also do so against the principal borrower in that time period, the borrower's indebtedness is discharged and subsection (D) prohibits the creditor from recovering a deficiency in any action—including one against a guarantor. But the plain language of § 33-814(D) does not support the Courtneys' position.

¶26 Section 33-814(A) provides that "within ninety days after the date of sale of trust property . . . an action may be maintained to recover a deficiency judgment against any person . . . liable on the contract . . . including any guarantor of or surety for the contract." Subsection (D) states that "[i]f no action is maintained for a deficiency judgment within the time period prescribed in subsection[] A . . . the proceeds of the sale . . . shall be deemed to be in full satisfaction of the obligation and no right to recover a deficiency in any action shall exist."

13

¶27     The Courtneys' broad interpretation is inconsistent with the plain language of the statute. Subsection (D) is merely a limitation section and is not intended to impose substantive restrictions on a creditor's rights. Nowhere does § 33-814 require the creditor to sue the principal debtor. Instead, subsection (A) provides that a creditor "may" seek an action against "any person directly, indirectly or contingently liable on the contract . . . including any guarantor" within ninety days. And subsection (D) says that it applies only when "no action is maintained for a deficiency judgment" within the ninety-day time period. Subsection (D) simply does not specify against whom "an action" must be "maintained" and we see no reason to read such a requirement into the statute. *See Clear Channel Outdoor*, 218 Ariz. 172, ¶ 6, 181 P.3d at 225. Additionally, it is well settled that a guaranty contract may provide greater liability than the principal obligation of the debtor, and that a guaranty may be enforced even when a lawsuit against the principal debtor is barred. *Sbrocca*, 180 Ariz. at 466, 885 P.2d at 154. And in any event, here "an action" was maintained within the ninety-day period when First Credit sued the Courtneys. We do not read subsection (D) to abrogate liability for an action properly brought under subsection (A). Because the Courtneys' contract interpretation theory fails and § 33-814(D) does not help them, we reject their argument.

**Attorney Fees**

¶28     The Courtneys request their attorney fees on appeal, but they were not successful in this appeal. We therefore deny their request. *See Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, ¶ 28, 99 P.3d 1030, 1037 (App. 2004). First Credit also requests its attorney fees and costs on appeal pursuant to Rule 21, Ariz. R. Civ. App. P.,

and the Commercial Guaranty or A.R.S. §§ 12-341 and 12-341.01. We award First Credit its reasonable attorney fees and costs pursuant to the Commercial Guaranty, upon its compliance with Rule 21.

## Conclusion

¶29        For the foregoing reasons, we affirm the judgments of the trial court.

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

CONCURRING:

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

/s/ *Michael Miller*
MICHAEL MILLER, Judge