IN THE

# ARIZONA COURT OF APPEALS
### DIVISION TWO

---

PI'IKEA, LLC, AN ARIZONA LIMITED LIABILITY COMPANY,
*Plaintiff/Appellee,*

*v.*

WILLIAM BENSON WILLIAMSON AND MARIANNE WILLIAMSON,
HUSBAND AND WIFE, AND AS CO-TRUSTEES OF THE WILLIAMSON
FAMILY TRUST,
*Defendants/Appellants.*

No. 2 CA-CV 2013-0065
Filed March 26, 2014

---

Appeal from the Superior Court in Pima County
No. C20124964
The Honorable Kenneth Lee, Judge

**AFFIRMED**

---

COUNSEL

Harlow Spanier and Heckele, PLLC, Tucson
By Mark W. Heckele
*Counsel for Plaintiff/Appellee*

Breen Olson & Trenton, LLP, Tucson
By Dennis M. Breen III
*Counsel for Defendants/Appellants*

## OPINION

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Kelly and Judge Eckerstrom concurred.

E S P I N O S A, Judge.

**¶1** Appellants William and Marianne Williamson, husband and wife and co-trustees of the Williamson Family Trust (the Williamsons), appeal from the trial court's grant of summary judgment in favor of Appellee Pi'Ikea, LLC (Pi'Ikea).[1] They argue the court erred in finding Pi'Ikea was not required to mitigate its damages after default of a note the Williamsons had guaranteed, and assert that a genuine issue of material fact regarding mitigation precluded summary judgment. For the following reasons, we affirm.

## Factual and Procedural Background

**¶2** In reviewing a summary judgment, this court views the evidence and all reasonable inferences from it in the light most favorable to the party opposing the judgment. *Warne Inv., Ltd. v. Higgins*, 219 Ariz. 186, ¶ 15, 195 P.3d 645, 650 (App. 2008); *Angus Med. Co. v. Digital Equip. Corp.*, 173 Ariz. 159, 162, 840 P.2d 1024, 1027 (App. 1992). Here, the parties largely agree on the underlying facts but dispute their legal effect. In February 2004, TBM Equities, LLC (TBM), gave a promissory note to Irwin Union Bank, F.S.B. (the Bank), in the original amount of $5,922,000 (the Note) and entered into a Construction Loan Agreement (the Loan Agreement) with the Bank. The Note and Loan Agreement were secured by a Deed of Trust, Assignment of Rents, Security Agreement and Financing Statement on an apartment building in Tucson (the Property). The

_____

[1]Pi'Ikea obtained an interest in the note through a chain of assignments.

Williamsons executed a Continuing Guaranty of the Note and the Trust Deed, in favor of the Bank (the Guaranty).

**¶3**     TBM and the Bank entered into an "Amended Note" in March 2006 and then a "Restated Note" in February 2008, neither of which altered the principal amount owed. In February 2011, the Restated Note was assigned to West CRE Venture 2010-2, LLC (West CRE), by the Federal Deposit Insurance Corporation, acting as receiver for the Bank. In March 2012, the Restated Note was assigned to Pi'Ikea by West CRE. Pi'Ikea is the current holder of the Guaranty.

**¶4**     TBM made all payments on the Restated Note up to and including a payment due on October 1, 2008. But it then made no further payments and failed to make required payments due at the note's maturity on December 31, 2008. In August 2012, Pi'Ikea filed suit pursuant to the Guaranty against the Williamsons and others. Pi'Ikea subsequently filed a motion for summary judgment in its favor in the amount of $9,170,950 plus attorney fees, taxable costs, and interest, which the trial court granted. The Williamsons appealed, and we have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Standard of Review**

**¶5**     Because our review of a trial court's grant of summary judgment is *de novo*, we independently determine whether the court's legal conclusions are correct. *Ledvina v. Cerasani*, 213 Ariz. 569, ¶ 3, 146 P.3d 70, 71 (App. 2006). Issues of contract and statutory interpretation are questions of law also subject to *de novo* review. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, ¶ 5, 52 P.3d 786, 788 (App. 2002) (interpreting guaranty).

**Discussion**

**¶6**     The Williamsons argue the trial court erred by finding no genuine issue of material fact as to whether Pi'Ikea had a duty to mitigate its damages by permitting a trustee sale to occur, or taking some other recourse, in 2008 when the Property was of sufficient value to cover the debt in full. They point out that the Bank

indicated in a separate suit that the Property had been appraised in June 2008 for $10.2 million and the amount owed on the loan at that time was $5.9 million as set out in the Restated Note. They also observe that after the Restated Note went into default, the Bank initiated a trustee sale in May 2009 and thereafter continued the sale date on a quarterly basis until August 2012 when it commenced the lawsuit against the Williamsons.[2] No payments were made during that period, and the Bank made no demand on the Williamsons.

¶7 The Williamsons maintain that "[d]uring that time when no action on the Trustee Sale took place[,] the property value sank and the unpaid loan balance grew from accrued interest at the default rate to [$]9.1 million." Thus, they contend, the effect of the trial court's decision that the Bank was not required to mitigate its damages is that "the Bank can simply let a $6 million dollar guaranty grow into a $60 million dollar obligation that was not contemplated by either party." According to the Williamsons, "[t]his unconscionable extension of the guaranty was certainly not the intent of the guarantor."

¶8 As the Williamsons correctly observe: "A basic principle of the law of damages is that one who claims to have been injured by a breach of contract must use reasonable means to avoid or minimize the damages resulting from the breach." *West Pinal Family Health Ctr., Inc. v. McBryde*, 162 Ariz. 546, 548, 785 P.2d 66, 68 (App. 1989). Failure to mitigate damages may be asserted to negate or reduce damages "'where the plaintiff by his own voluntary activity has unreasonably exposed himself to damage or increased his injury.'" *SDR Assocs. v. ARG Enters., Inc.*, 170 Ariz. 1, n.2, 821 P.2d 268, 271 n.2 (App. 1991), *quoting McCormick on Damages*, § 34 at 131 (1934). This common law defense applies to guaranties, *see First Credit Union v. Courtney*, 233 Ariz. 105, ¶ 12, 309 P.3d 929, 932 (App.

---

[2]Pi'Ikea asserted in its answering brief that from the time of default until May 2012, the Bank and TBM were attempting to reach a settlement. The Williamsons did not contest that statement in their reply brief and at oral argument acknowledged TBM and the Bank had been discussing settlement but claimed it was only for "a few months."

2013), and is set forth in § 42 of the Restatement (Third) of Suretyship and Guaranty § 14 (1996) [hereinafter Restatement][3] which provides:

> If the underlying obligation is secured by a security interest in collateral and the obligee impairs the value of that interest, the secondary obligation is discharged to the extent that such impairment would otherwise increase the difference between the maximum amount recoverable by the secondary obligor pursuant to its subrogation rights (§§ 27-31) and the value of the secondary obligor's interest in the collateral.

This defense, however, whether termed mitigation of damages or impairment of collateral, may be waived by agreement of the parties.

¶9 It is well established in Arizona that surety rights can be waived by contract. *See Data Sales Co. v. Diamond Z Mfg.*, 205 Ariz. 594, ¶ 16, 74 P.3d 268, 272 (App. 2003) (citing cases); *see also McClellan Mortg. Co. v. Storey*, 146 Ariz. 185, 188, 704 P.2d 826, 829 (App. 1985) (finding unambiguous waiver of suretyship defense and noting "[i]t is well settled that most rights may be waived"); *cf. Holmes v. Graves*, 83 Ariz. 174, 178, 318 P.2d 354, 357 (1957) ("Statutory provisions enacted for the benefit of individuals may be so far waived by those for whose benefit they were enacted that they are estopped to insist upon their protection."); Restatement § 6 & cmt. b ("Each rule in this Restatement stating the effect of suretyship status may be varied by contract between the parties subject to it."). As the Restatement further observes, it is "routine" in suretyship contexts to forego defenses, including the defense of impairment of

---

[3]Arizona courts will apply the law of the Restatement absent contrary Arizona law. *Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 102, 800 P.2d 962, 968 (Ariz. 1990).

collateral.[4]  Restatement § 48 cmt. a; *see also Data Sales Co.*, 205 Ariz. 594, ¶ 21, 74 P.3d 268, 273 (noting Restatement provisions reflect general policy permitting waivers); *cf.* A.R.S. § 47-3605 cmt. 2 ("It is standard practice to include a waiver of suretyship defenses in notes given to financial institutions or other commercial creditors.").  By waiving these protections, "the secondary obligor is not discharged as a result of loss caused by actions of the obligee to which the secondary obligor consents."  Restatement § 48 cmt. a.

**¶10**        The extent of a guarantor's liability is governed by the terms of the guaranty agreement.  *Tenet Healthsystem TGH*, 203 Ariz. 217, ¶ 7, 52 P.3d at 788.  Surety defenses may be either expressly or impliedly waived within the agreement, *Data Sales Co.*, 205 Ariz. 594, ¶ 27, 74 P.3d at 274, and no fixed language or form of consent is required for waiver, Restatement § 48 cmt. b.  If the agreement is ambiguous, we generally construe it in favor of the guarantor.  *First Credit Union*, 233 Ariz. 105, ¶ 9, 309 P.3d at 932.  But if the language is clear, we must give effect to the contract as written.  *Desarrollo Immobiliario y Negocios Industriales De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co.*, 229 Ariz. 367, ¶ 24, 276 P.3d 1, 8 (App. 2012); *Consol. Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 455, 682 P.2d 457, 460 (App. 1984); *see also* Restatement § 14 (standard contract rules apply to secondary obligations).  As with all contracts, "our goal is to effectuate the parties' intent, giving effect to the contract in its entirety."  *Tenet Healthsystem TGH*, 203 Ariz. 217, ¶ 7, 52 P.3d at 788-89.

**¶11**        Under the Guaranty the Williamsons executed, they agreed as follows:

> 2.1    <u>Guaranty</u>.  Guarantors jointly and severally guaranty and promise to pay the Indebtedness to Lender or its order.  This Guaranty is irrevocable.  The obligations of

---

[4] While Arizona courts have addressed waiver of surety defenses generally, the ability to waive the defense of impairment of collateral has not yet been addressed in light of the 1996 Restatement.

Guarantors hereunder are continuing, absolute and unconditional. The foregoing guaranty is a guaranty of payment and not of collectibility . . . [.] The obligations of each Guarantor hereunder are independent of the obligations of Borrower or any other Guarantor . . . [.] Lender shall have no obligation to proceed against any collateral (including the Deed of Trust) directly or indirectly securing any of the Indebtedness, and no obligation to enforce any right or remedy . . . [.]

2.2 <u>Waivers</u>. Each Guarantor waives and agrees not to assert or take advantage of (a) the provisions of Arizona Revised Statutes § . . . 47-3605 . . . and any similar or analogous other statutory or common law or procedural rule of the State of Arizona . . . (b) any right to require Lender to proceed against Borrower or any other person, to proceed against or exhaust any security held by Lender at any time to directly or indirectly secure the Indebtedness, or to pursue any other remedy in Lender's power before proceeding against such Guarantor . . . .

¶12 As Pi'Ikea points out, the Williamsons expressly waived their protections under A.R.S. § 47-3605, which include a defense for parties liable in connection with a secured obligation if the party entitled to enforce the instrument "impairs the value of the interest in collateral," § 47-3605(E).[5] But this section is derived from Article 3

---

[5]In full, A.R.S. § 47-3605(E) states:

If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or

of the Uniform Commercial Code (U.C.C.) and is applicable to negotiable instruments, but not to the Guaranty because it is a separate document from the promissory note. *See* Restatement § 4 cmt. a ("When the underlying obligation is represented by a note of which the principal obligor is the maker, but the secondary obligor is not a party to the note, Article 3 is inapplicable to the suretyship relationship."); *see also Grimm,* 140 Ariz. at 457, 682 P.2d at 461 (Arizona Commercial Code not applicable to continuing guaranties). Had the Williamsons signed the note itself, § 47-3605(E) would have applied to the Williamsons' obligation absent the express waiver in the Guaranty. *See* Restatement § 4 cmt. a, illus. 1-2.

¶13        The Williamsons, however, waived not only § 47-3605, but "any similar or analogous other statutory or common law or procedural rule of the State of Arizona." And although § 47-3605(E)

---

accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment. The value of an interest in collateral is impaired to the extent the value of the interest is reduced to an amount less than the amount of the right of recourse of the party asserting discharge or the reduction in value of the interest causes an increase in the amount by which the amount of the right of recourse exceeds the value of the interest. The burden of proving impairment is on the party asserting discharge.

An "accommodation party" as used in this section is defined by A.R.S. § 47-3419(A), which states:

If an instrument is issued for value given for the benefit of a party to the instrument ("accommodated party") and another party to the instrument ("accommodation party") signs the instrument for the purpose of incurring liability on the instrument without being a direct beneficiary of the value given for the instrument, the instrument is signed by the accommodation party "for accommodation."

is inapplicable to the Guaranty, similar protections are found in the common law, which supplements the U.C.C. *See Koss Corp. v. Am. Exp. Co.*, 233 Ariz. 74, ¶ 17, 309 P.3d 898, 904 (App. 2013) (principles of common law supplement but do not supplant U.C.C.). The U.C.C. and common law protections in this area are "essentially parallel." U.C.C. § 3-605 cmt. 1 (2002) (noting U.C.C. rules concerning discharge of secondary obligors "essentially parallel modern interpretations of the law of suretyship and guaranty that apply when a secondary obligor is not a party to an instrument"); *see also First Credit Union*, 233 Ariz. 105, ¶ 12, 309 P.3d at 932 ("suretyship defenses" available at common law); 6A Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code*, § 3-606:3 (3d. ed. 2002) (U.C.C. codifies common law principle of impairment of collateral). Thus, common law protections applicable to guaranties are similar to § 47-3605(E) and therefore waived by the clear language of section 2.2(a) of the Guaranty.

**¶14** The Williamsons acknowledge that Pi'Ikea and its predecessors in interest had "multiple avenues available for recovery under the guaranty" but assert "the bank had the duty to elect some remedy concurrently or consecutively from the time of the default." Thus, while conceding the Bank had its choice of remedies, they maintain it nevertheless had to elect a remedy in a timely manner given its knowledge of the property devaluation. But the Williamsons provide no legal support for this premise, and indeed, authority is to the contrary.[6] *See, e.g., Austad v. United States*, 386 F.2d 147, 150-51 (9th Cir. 1967) (claim of delay in foreclosure causing diminishment of collateral value waived by contract language permitting creditor to "forbear from realizing [on the collateral] all as the [creditor] in its uncontrolled discretion may deem proper"); *Cisson Const., Inc. v. Reynolds & Assocs., Inc.*, 429 S.E.2d 847, 850 (S.C. Ct. App. 1993) ("any alleged delay by the bank in the exercise of its rights . . . [is] not subject to being tested for

---

[6]In their briefs, the Williamsons cited authority for the general proposition that parties injured by a contract breach must take reasonable steps to mitigate the injury; they acknowledged at oral argument, however, that none of the cases relied on involved an express waiver of mitigation of damages.

reasonableness . . . [as that would be] tantamount to prescribing its remedy under the note and guaranty"); *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 710 (Tex. 1990) (where guarantor waives requirement to proceed against collateral the "right to decide whether to liquidate the collateral necessarily included the right to decide when to do it"). Accordingly, we find the language of section 2.2(a) constitutes an explicit waiver of the mitigation defense the Williamsons relied on in opposition to summary judgment.

¶15 Further, as the trial court observed, in the Guaranty the Williamsons agreed, *inter alia*, that the lender had no obligation to proceed against any collateral directly or indirectly and no obligation to enforce any right or remedy, and waived any right to require the lender to proceed against or exhaust any security held by the lender at any time to directly or indirectly secure the indebtedness. Although such clauses could be reasonably read as impliedly waiving the defense of mitigation of damages, *see Data Sales Co.*, 205 Ariz. 594, ¶ 27, 74 P.3d at 274 (surety defenses can be impliedly waived within guaranty), having already found express waiver, we need not reach that issue.[7]

¶16 And because the Williamsons expressly waived their defense of mitigation of damages, we need not address our 1980 decision, *Universal Inv. Co. v. Sahara Motor Inn, Inc.*, 127 Ariz. 213, 619 P.2d 485 (App. 1980), cited by Pi'Ikea for the proposition that the principle of mitigation of damages is not applicable when there is an absolute promise to pay. Further, in view of the Williamsons' waiver, and our conclusion the trial court ruled correctly, albeit on other grounds, we need not reach the Williamsons' additional argument regarding the sufficiency of the evidence demonstrating

---

[7]The trial court based its summary judgment ruling on the more general provisions of sections 2.1 and 2.2(b) of the Guaranty, apparently because Pi'Ikea did not bring to the court's attention the Williamsons' express waiver of their protections in subsection 2.2(a). However, we may affirm a trial court's grant of summary judgment if it is correct for any reason. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, ¶ 14, 32 P.3d 31, 36 (App. 2001).

lack of mitigation nor Pi'Ikea's argument concerning the Williamsons' alleged failure to dispute damages.

### Attorney Fees and Costs

**¶17**		Both the Williamsons and Pi'Ikea have requested attorney fees on appeal. Pi'Ikea bases its request on section 3.4 of the Guaranty which provides, *inter alia*, that if a judicial proceeding is brought by the "Lender to enforce this Guaranty, Guarantors jointly and severally promise to pay Lender's reasonable attorneys' fees and court costs incurred therein." Contractual provisions for attorney fees are enforced according to the terms of the contract. *See First Fed. Sav. & Loan Ass'n of Phoenix v. Ram*, 135 Ariz. 178, 181, 659 P.2d 1323, 1326 (App. 1982). Because Pi'Ikea has prevailed on appeal, we grant its request and award its reasonable attorney fees and costs on appeal upon its compliance with Ariz. R. Civ. App. P. 21.

### Disposition

**¶18**		For the foregoing reasons, the trial court's grant of summary judgment in favor of Pi'Ikea is affirmed.