NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of the Estate of:

MARY D. WARREN, *Deceased.*

LEIZA M. GOUDEAU, *Petitioner/Appellant,*

*v.*

ADRIANNE GOUDEAU, *Respondent/Appellee.*

No. 1 CA-CV 24-0662 PB

FILED 10-16-2025

Appeal from the Superior Court in Maricopa County
No. PB2023-003141
The Honorable Lisa Ann Vandenberg, Judge, *Retired*

**AFFIRMED**

COUNSEL

Platt & Westby, Phoenix
By Elizabeth A. Moore, Matthew G. Hayes
*Counsel for Petitioner/Appellant*

Adrianne Goudeau, Tempe
*Respondent/Appellee*

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**T H U M M A**, Judge:

¶1        Leiza Goudeau (Leiza) appeals from an order finding Mary D. Warren's (Warren) purported last will was not self-authenticating and, on the evidence presented, was not valid. As a result, the superior court did not admit the will in this probate proceeding. On appeal, Leiza argues that the will was valid, that Adrianne Goudeau (Adrianne)[1] failed to rebut a presumption of testamentary capacity and that the court exceeded its statutory authority, including allowing Warren's home to be sold. Because Leiza has shown no error, the rulings are affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        Warren died on December 26, 2020. In August 2023, Adrianne filed an Application for Informal Probate of Will and for Informal Appointment of Personal Representative (Application). Adrianne mentioned a one-page will, which she alleged was validly executed on March 16, 2016, as Warren's last will and had not been revoked or amended. The will named Leiza personal representative, with Adrianne as the alternate. The will stated Warren's "wish" that her residence "[b]e established as the family home not [to] be sold if and unless ALL my children agree." A "YOUR NAME" blank contains, in handwriting, "Mary Dolores Warren," with "aka Hightower" under the blank. The will has a notary seal and an apparent signature of Jaclynn A. Davis. The will also has an apparent signature of Marsha Begay, with the notation "witness" but without a corresponding date.

¶3        The Probate Registrar denied the Application, and an Amended Application filed in October 2023, noting deficiencies, including that Adrianne had filed more than two years after Warren's death. *See* Arizona Revised Statutes (A.R.S.) § 14-3108 (requiring, with exceptions not

---

[1] Given their common last name, this decision uses their first names throughout.

applicable here, that an informal probate proceeding "shall not be commenced more than two years after the decedent's death") (2025).[2]

¶4          Later in October 2023, Adrianne again filed an Application for Formal Probate of Will and Informal Appointment of Personal Representative. An initial hearing, set for March 2024, was continued to May 2024. There, Leiza objected to the appointment of a personal representative, and the court ordered her to file a formal objection.

¶5          Leiza then filed an Application for Formal Probate of Will, with Leiza arguing that the two-year limitations period under A.R.S. § 14-3108 should not apply because "there were many restrictions due to COVID." Leiza and Adrianne made various filings, including competing filings each seeking to be appointed as Personal Representative. The court set trial for July 2024.

¶6          At a bench trial lasting most of one day, the court received exhibits (including the one-page will) and heard testimony from Leiza, Adrianne, and other witnesses. Neither Davis, the Notary listed on the will, nor Begay, the witness listed on the will, testified. Three witnesses, however, testified that the will was not valid.

¶7          When Bayrd Goudeau, Adrianne's son and Warren's grandson, was asked without objection, "What did you think of the will?", he answered, "It wasn't signed by her [Warren]. My grandmother doesn't sign her middle name Dolores full out. It's Mary D. Warren." When asked if he ever knew Warren "to use 'a/k/a,'" he answered "No." Richard Goudeau, Warren's son, testified that the will "did not look like anything [Warren] would have produced," noting she was "a bureaucrat, was very detail[] oriented." Adrianne testified there were many flaws in the will, including that Warren "never use[d] 'a/k/a;'" "Hightower was never an 'a/k/a;'" and the Social Security Number listed was not Warren's, also stating "[t]here are so many flaws in the will, so many big question marks about who wrote it and how it was administered and dates and names that are on it, numbers that don't even really jive with each other."

¶8          After weighing and assessing the conflicting evidence, the superior court found that the will was not self-authenticating as it did not meet the statutory requirements. *See* A.R.S. § 14-2504 (requirements for a "self-proved" will). Noting testimony from the three witnesses who

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

challenged the validity of the will, the court did not admit the will, tacitly finding it was not valid. The court appointed Adrianne as Personal Representative and ordered her to resolve the intestate estate. This court has jurisdiction over Leiza's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶9**      This court will affirm the superior court's findings, after an evidentiary hearing, unless clearly erroneous, deferring to the trial judge's opportunity to weigh and assess witness credibility and conflicting evidence. *In re Ghostley*, 248 Ariz. 112, 115 ¶ 8 (App. 2020) (quoting *In re Estate of Zaritsky*, 198 Ariz. 599, 601 ¶ 5 (App. 2000)). This court reviews the superior court's legal conclusions de novo. *Id.*

## I.    The Superior Court Properly Found the Will was Not Valid.

**¶10**     As applicable here, a will can be valid under Arizona law if (1) it is self-authenticated or (2) evidence otherwise shows it is valid.[3] The superior court found the will was not valid under either of these options, findings Leiza challenges on appeal.

### A.    The Superior Court Properly Found the Will was Not Self-Authenticating.

**¶11**     By statute, a will may be "made self-proved by its acknowledgment by the testator and by affidavits of the witnesses if the acknowledgment and affidavits are made before an officer authorized to administer oaths under the laws of the state in which execution occurs and are evidenced by the officer's certificate, under official seal." A.R.S. § 14-2504(A). A self-authenticated will requires formalities for the testator and witnesses that must appear "in substantially the following form:"

> I, _____, the testator, sign my name to this instrument this _____ day of _____, and being first duly sworn, do declare to the undersigned authority that I sign and execute this instrument as my will and that I sign it willingly, or willingly direct another to sign for me, that I execute it as my free and voluntary act for the purposes expressed in that document

---

[3] Although Arizona recognizes holographic (handwritten) wills, A.R.S. § 14-2503, there is no claim that the will in dispute here is a holographic will.

and that I am eighteen years of age or older, of sound mind and under no constraint or under influence.

. . .

We, _____, _____, the witnesses, sign our names to this instrument being first duly sworn and do declare to the undersigned authority that the testator signs and executes this instrument as his/her will and that he/she signs it willingly, or willingly directs another to sign for him/her, and that each of us, in the presence and hearing of the testator, signs this will as witness to the testator's signing and that to the best of our knowledge the testator is eighteen years of age or older, of sound mind and under no constraint or undue influence.

A.R.S. § 14-2504(A). As the superior court summarized, the will here fails to satisfy several of these requirements:

[t]ypically for a self-authenticating will, it needs to indicate that someone has verified that the person signing it as the decedent is, in fact, the decedent. This document doesn't do that. It then needs to verify that the folks that are identified as witnesses [verify] what they're witnessing. It does not do that. It is not self-authenticating.

Accordingly, Leiza has not shown that the superior court erred in finding that the will was not self-authenticated. *See In re Estate of Muder*, 159 Ariz. 173, 175 (1988) ("The self-proving affidavit does not state that the testator signed or acknowledged his signature, or the will, in the presence of witnesses.") (citation omitted); *accord In re Mackaben's Estate*, 126 Ariz. 599, 601 (App. 1980).

### B. The Superior Court Properly Found the Will was Not Valid.

¶12 Leiza argues the will was valid because it complied with the requirements for a paper will under Arizona law. With exceptions not applicable here, a paper will must be in writing, signed by the testator or the testator's representative and "[s]igned by at least two people, each of

whom signed within a reasonable time after that person witnessed either the signing of the will . . . or the testator's acknowledgment of that signature or acknowledgment of the will." A.R.S. § 14-2502(A)(1)-(3). Although Begay was the only listed "witness" who signed the will, Leiza argues that under *In re Estate of Bradley*, 244 Ariz. 431 (App. 2018), Davis (the notary) properly constitutes the second witness required by § 14-2502. *Bradley*, however, does not show that the superior court erred in finding the will was not valid.

¶13 *Bradley* held that a notary may qualify as one of the two required witnesses to a will. *Id.* at 435 ¶ 20. Unlike this case, however, the notary in *Bradley* testified that she was present and saw both the testator and the other witness sign the will. *Id.* at 432 ¶ 5. In this case, by contrast, the notary (Davis) was not called to testify at the evidentiary hearing. Moreover, the signature of the witness (Begay) is below Davis' signature and, unlike Davis' signature, is undated. Thus, *Bradley* is distinguishable given these different facts.

¶14 More fundamentally, because these purported witnesses to the will did not testify, the record fails to show that they both saw Warren sign the will or saw each other sign the will. As the superior court found, Davis' notary stamp, signature and date do "not demonstrate that a notary has identified and authenticated the decedent's name or [identify] whether the wording prior to the decedent's name is, in fact, the decedent's last will and testament." The will also "does not indicate what Marsha Begay was witnessing or a date." Above and beyond these defects, the superior court heard testimony from three witnesses indicating that the will did not reflect Warren's "desires and last will and testament."

¶15 Leiza argues, with some force, that Arizona law favors a testamentary disposition. But Arizona law also requires the formality set forth by these statutory provisions for a will to be valid. *See In re Wilkins' Estate*, 54 Ariz. 218, 222 (1939) (finding the testamentary disposition of ones property turns on "strict compliance with the requirements of the statute"); *see also In re Estate of Bixby*, 2 CA-CV 2024-0366, 2025 WL 1909833, at *2 ¶ 5 (Ariz. Ct. App. June 11, 2025) (finding that testamentary intent alone is not enough to make a will and that the right to make a will is available on strict requirements of the statute).

¶16 Given these evidentiary gaps, and recognizing this court defers to the superior court in weighing conflicting evidence and making credibility determinations, *Ghostley*, 248 Ariz. at 117 ¶ 21 (citing cases); *Zaritsky*, 198 Ariz. at 601 ¶ 5 (citing cases), Leiza has not shown that the superior court erred in finding the will was not enforceable and, as a result,

in refusing to probate it. A.R.S. § 14-2502; *accord First Credit Union v. Courtney*, 233 Ariz. 105, 107 ¶ 7 (App. 2013) (noting ruling may be affirmed if it is correct for any reason).[4]

## II. The Superior Court Did Not Exceed its Statutory Authority.

**¶17** Leiza argues that the superior court lacked authority to enter its orders because Adrianne filed this case more than two years after Warren died, contrary to A.R.S. § 14-3108. Leiza relies on *In re Estate of Wood*, which found that the superior court lacked the authority, given A.R.S. § 14-3108, to "admit[] the will to probate" when the petition to probate was filed nearly five years after the decedent's death. 147 Ariz. 366, 367, 369 (App. 1985). In doing so, *Estate of Wood* noted none of the four exceptions to the limitation period in A.R.S. § 14-3108 applied. *Id.* at 367.

**¶18** As applicable here, and as Leiza suggests, one exception to the two-year bar provides that "[a]n informal probate or appointment or a formal testacy or appointment proceeding may be commenced [after two years of the decedent's death] if no court proceeding concerning the succession or administration has occurred within the two year period." A.R.S. § 14-3108(4). From the record provided, this exception to the two-year limitations period applies to this case, meaning Adrianne's petition was not time-barred. *See Ader v. Estate of Felger*, 240 Ariz. 32, 41 ¶ 28 (App. 2016).

**¶19** Leiza also notes that, where this specific exception to the two-year limitations period applies, "the personal representative has no right to possess estate assets . . . beyond that necessary to confirm title thereto in the rightful successors to the estate. Claims other than expenses of administration shall not be presented against the estate." A.R.S. § 14-3108(4). Here, because the court properly ruled that the will was not admitted to probate, it was "left to follow the statutory direction with regards to an intestate probate." The court appointed Adrianne as personal representative, which it could do under this exception to the two-year limitations period.

---

[4] Leiza argues on appeal that Adrianne failed to produce sufficient evidence to rebut the presumption of testamentary capacity. The superior court, however, found the will was not valid, not that Warren lacked testamentary capacity to sign a valid will. Accordingly, the superior court had no occasion to address testamentary capacity, and this court need not address that issue.

¶20 The court then ordered the personal representative to "resolve the estate," which at that time only included Warren's home. The court specified the process to notify creditors and stated that once all claims were resolved, the residual proceeds would be distributed pursuant to the identified heirs. To avoid all doubt, the court directed Adrianne on how the estate should be resolved. Because Leiza and her son still lived in the home, the court ordered them, and anyone else, to vacate the property. Additionally, the court gave Adrianne instructions on how to market the home.

¶21 All these directives comply with the restrictions set forth in A.R.S. § 14-3108(4). *See Ader*, 240 Ariz. at 41 ¶¶ 28-30. These orders relate to confirming title to the rightful successors of the estate and the expenses of the administration. For these reasons, Leiza has failed to show that the superior court exceeded its statutory authority.

## III. Attorneys' Fees and Costs.

¶22 Leiza requests an award of attorneys' fees and costs on appeal. Because she has shown no entitlement to such an award, her request is denied. Adrianne is awarded her taxable costs on appeal contingent upon her compliance with ARCAP 21.

## CONCLUSION

¶23 The superior court's rulings are affirmed.

